

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-300-CV

WOOD CARE CENTERS, INC.                                          APPELLANT

V.

EVANGEL TEMPLE ASSEMBLY OF GOD                                   APPELLEE
OF WICHITA FALLS, TEXAS

------------

### FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

## OPINION

------------

## I.      Introduction

This breach of contract case concerns a facility that Appellant Wood Care Centers, Inc. ("Wood Care") leased to Appellee Evangel Temple Assembly of God of Wichita Falls, Texas ("Evangel Temple") in fall 2005 for the immediate purpose of housing Hurricane Katrina evacuees. Evangel Temple terminated the parties' lease agreement (the "Agreement") after the last hurricane evacuees

left the facility. Wood Care later sued Evangel Temple and argued Evangel Temple was obligated to find other uses for the facility before terminating the Agreement. The trial court entered a take-nothing judgment against Wood Care after a bench trial.

In two issues, Wood Care argues the trial court improperly considered parol evidence in its interpretation of the Agreement and the evidence is legally and factually insufficient to support the trial court's conclusion that Evangel Temple did not breach the Agreement. We affirm.

## II. Factual and procedural background

Mike Wood testified for Wood Care at trial. He said Wood Care originally owned and operated as many as eleven nursing homes. Wood Care previously sold its other nursing home facilities but was unable to sell the facility at issue because it was closed and no longer licensed to operate as a nursing home.

After Hurricane Katrina made landfall on August 29, 2005, Evangel Temple contacted Wood Care to lease the facility to assist Katrina evacuees. Wood testified that after the parties reached an initial agreement, Evangel Temple retained an attorney to finalize the Agreement. Wood testified Evangel Temple's attorney drafted the document, but Evangel Temple's business administrator said Wood provided the initial draft to Evangel Temple.

2

The parties exchanged several drafts of the proposed agreement and signed the final version of the twenty-year lease on September 6, 2005. Evangel Temple's monthly lease payment was $10,997, although Wood Care made a charitable contribution to Evangel Temple during the initial term in the form of a reduced monthly lease payment. The Agreement contained a "ten-percent termination clause" that stated:

> Tenant, however, shall have the option of terminating this lease at any time by giving Landlord written notice of its election to do so and payment to Landlord of a sum of money equal to 10% of the balance of the rental payments then owed under the terms of this lease.

The Agreement also contained a "tax-exemption termination clause" that stated:

> Both parties agree to cooperate with each other to achieve any available property tax exemption. In the event a property tax exemption for the leased premises is denied or suspended, Tenant shall have the option to terminate this lease. If, notwithstanding, the denial of such property tax exemption, Tenant elects to continue the lease, then Tenant shall be responsible for the payment of all property taxes and assessments and shall timely pay such taxes or assessments.

The original draft of the Agreement did not include the tax-exemption termination clause. Wood testified that although he did not specifically remember, he thought Evangel Temple added the tax-exemption termination clause because a church is traditionally tax-exempt. Wood also testified he

3

understood Evangel Temple would initially use the facility to house Hurricane Katrina evacuees.

After signing the Agreement, Evangel Temple sought a tax exemption for the facility, stating in the application that the primary use was "to house victims of natural disasters." The appraisal district granted the exemption and informed Evangel Temple in writing that if the use ever changed, the church must notify the appraisal district.

For the first nine months, Evangel Temple paid reduced rental payments to Wood Care while receiving financial assistance from FEMA, but the last evacuees left the facility in approximately May 2006. In late June 2006, several Evangel Temple representatives met with Wood and gave Wood Care notice that Evangel Temple would soon move out of the facility. Evangel Temple sent a termination letter to Wood Care on June 30, 2006, and Wood Care sent a response the same day making demand for payment of ten percent of the remaining lease payments under the ten-percent termination clause.

Evangel Temple vacated the facility in approximately July 2006. According to Wood, Wood Care was unable to sell or lease the facility after Evangel Temple vacated, and he testified Wood Care's damages totaled $256,279.90 in lost rent, ad valorem taxes, insurance premiums, and maintenance costs. Wood testified he believes Evangel Temple breached the

4

Agreement because it had a duty to implement other tax-exempt uses at the facility and could have easily done so.

Kile Bateman testified that he is the lead pastor of Evangel Temple and that Chad Sykes was the business administrator, outreach pastor, and director of "Called To Compassion." Bateman testified that Evangel Temple had a few tax-exempt properties and that, typically, tax exemptions are available if property is used for non-profit purposes. Evangel Temple's tax-exempt properties included undeveloped property next to the church and a facility that housed Masters Commission students, drug and alcohol counseling, a college and career ministry, and flood victims.

Bateman testified that the Agreement did not limit Evangel Temple's use of the facility and that the parties contemplated future tax-exempt uses for the facility when negotiating the Agreement.[1] However, Bateman testified that he understood Evangel Temple's right to terminate the Agreement was dependent on Evangel Temple having a program in place that could operate in a self-sustaining manner at the facility. Bateman believed that if the facility lost its tax exemption, Evangel Temple had a choice to terminate the Agreement

---

[1] Sykes gave similar testimony but added that Evangel Temple was always aware the evacuees would eventually go back home.

without liability or continue with the Agreement in the hope that something arose in the future.

Bateman agreed it would have been possible to use the facility for the Masters Commission ministry, "very limited" worship services, or bible study groups. He also said Evangel Temple "could have" submitted a new application for tax-exempt status citing "religious purposes" as the primary use of the facility and conducted some type of activity on the property that would have allowed the property to remain tax-exempt. Although Bateman agreed that "[a]nything is possible," he testified that "not everything is reasonable."

Bateman testified that if there were another possible use for the facility, Evangel Temple would have maintained the tax-exempt status, but that there were no other reasonable uses for the facility. He explained that Evangel Temple considered using the property for a children's home, a women's shelter, and a Sudanese refugee center. After the lawsuit was filed, Evangel Temple considered using the facility to house at-risk teenagers or as a Life Challenge ministry. Ultimately, Bateman believed Evangel Temple did not have any reasonable uses available for the facility. He testified he believed Evangel Temple did not breach the Agreement because Evangel Temple did not have any needs that were not being fulfilled by another facility and because Evangel Temple did all it could to locate another tax-exempt use.

The trial court conducted a bench trial over two days in January and April 2008 and rendered a take-nothing judgment against Wood Care on June 13, 2008. Wood Care requested and the trial court signed findings of fact and conclusions of law.

## III. The Trial Court's Interpretation of the Agreement

### A. Applicable law

When construing contracts and other written instruments, our primary concern is to ascertain the true intent of the parties as expressed in the instrument. *NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 463 (Tex. App.—Fort Worth 2007, no pet.). We must examine and consider the entire contract in an effort to harmonize and give effect to all provisions so that none are rendered meaningless. *Id.*; *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Dist., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 530 (Tex.1987)).

Lack of clarity or a disagreement among the parties does not necessarily create an ambiguity. *Universal Health Servs., Inc. v. Renaissance Women's*

*Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). Rather, whether "a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Id.* "If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law." *Frost Nat'l Bank*, 165 S.W.3d at 312 (citing *Webster*, 128 S.W.3d at 229).

### B. Conflicting Termination Clauses

Wood Care contends in part of its first issue that the trial court improperly considered parol evidence because the conflict between the tax-exemption termination clause and the ten-percent termination clause could be resolved by applying rules of contract construction and did not create an ambiguity.[2] In response, Evangel Temple argues the conflict between the tax-exemption

---

[2] Wood Care states in its brief that it will "assume" that the question of terminating the Agreement for loss of tax-exempt status presents a patent ambiguity, but then states that the rules of construction resolve the ambiguity, so the "Agreement is not rendered 'ambiguous' in the sense that the Court may consider extrinsic evidence" to determine its meaning. *See RSI Int'l, Inc. v. CTC Transp., Inc.*, 291 S.W.3d 104, 106 (Tex. App.—Fort Worth 2009, no pet.) ("A contract is ambiguous only if, after the application of established rules of construction, an agreement is still susceptible to more than one reasonable meaning.").

termination clause and the ten-percent termination clause created an ambiguity and the trial court properly considered parol evidence.

The Agreement included both a ten-percent termination clause and a tax-exemption termination clause.[3] The ten-percent termination clause required Evangel Temple to pay Wood Care "10% of the balance of the rental payments then owed under the terms of [the Agreement]" if Evangel Temple terminated the Agreement before the twenty-year lease expired. The tax-exemption termination clause, however, allowed Evangel Temple to terminate the Agreement without liability "[i]n the event a property tax exemption for the leased premises [was] denied or suspended."

Wood Care correctly asserts that, if possible, the Agreement must be construed in a way that neither the ten-percent termination clause nor the tax-exemption termination clause are rendered meaningless. *See Potter*, 230 S.W.3d at 463 (stating courts must examine and consider the entire contract "in an effort to harmonize and give effect to all provisions so that none are rendered meaningless"). Interpreting the Agreement to require Evangel Temple to pay a ten-percent penalty for terminating the Agreement when the property was no longer tax-exempt renders the tax-exemption termination clause

---

[3] The Agreement had other termination clauses that are not relevant to this appeal.

meaningless. Therefore, the tax-exemption termination clause controls over the ten-percent termination clause in the event the property loses its tax-exempt status, as it did in this case, and there is no ambiguity. *See RSI Int'l, Inc.*, 291 S.W.3d at 106 (stating contract ambiguous only if still susceptible to more than one reasonable meaning after applying rules of construction).

Because the conflict between the ten-percent termination clause and the tax-exemption termination clause does not create an ambiguity, the trial court erred by admitting parol evidence on this issue. *See Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 681 (Tex. App.—Dallas 2008, no pet.) (recognizing "courts do not consider extrinsic evidence in interpreting [an] agreement" when it is not ambiguous). But Wood Care has not shown the trial court's consideration of parol evidence led to an improper judgment or prevented Wood Care from properly presenting the case to this court. *See* Tex. R. App. P. 44.1(a). The trial court admitted only brief testimony concerning the parties' intent for the tax-exemption termination clause to control over the ten-percent termination clause.[4] Also, the trial court's ultimate interpretation of the Agreement, that

---

[4] Bateman testified he understood that if Evangel Temple lost its exempt status, the church had a choice to "remove [it]self from [the] property" or "continue to make the payments and hope something comes along," and Sykes testified he understood the tax-exemption termination clause meant Evangel Temple could terminate the Agreement without liability if the tax-exemption was not initially granted or subsequently sustained.

Evangel Temple could terminate the Agreement without a ten-percent penalty if the facility was no longer tax-exempt, was correct. Therefore, the trial court's erroneous consideration of parol evidence does not constitute reversible error. *See Sadoskas v. Sadoskas*, No. 13-02-216-CV, 2003 WL 21666115, at *2 (Tex. App.—Corpus Christi July 17, 2003, no pet.) (mem. op.) (finding no reversible error in admitting a party's subjective intent testimony where "the trial court's final ruling regarding the contract was correct"); *see also Orix Credit Alliance, Inc. v. Omnibank, N.A.*, 858 S.W.2d 586, 594 (Tex. App.—Houston [14th Dist.] 1993, no writ) (holding admission of parol evidence of intent of parties was irrelevant because the agreement alone showed defendant was entitled to judgment as a matter of law). We therefore overrule this portion of Wood Care's first issue.

## C.    The Tax-Exemption Termination Clause

In the remainder of its first issue, Wood Care contends the trial court incorrectly interpreted the tax-exemption termination clause. Specifically, Wood Care argues the trial court erred by (1) considering parol evidence to interpret the tax-exemption termination clause and (2) interpreting the tax-exemption termination clause in a manner that permitted Evangel Temple to cause the facility to lose its tax exemption and then terminate the Agreement without liability because the facility was no longer tax-exempt.

11

We do not agree the trial court improperly considered parol evidence to interpret the tax-exemption termination clause. As discussed above, the trial court admitted parol evidence of the parties' intentions, but the parol evidence all concerned the conflict between the ten-percent termination clause and the tax-exemption termination clause, not the meaning of the tax-exemption termination clause itself. Thus, the trial court did not consider parol evidence when it interpreted the tax-exemption termination clause. We overrule this portion of Wood Care's first issue.

Wood Care also argues the trial court incorrectly interpreted the tax-exemption termination clause to permit Evangel Temple, through its own conduct, to cause the facility to lose its tax exemption and then use the loss of tax-exempt status to terminate the Agreement without liability. To support its contention, Wood Care cites several cases for the proposition that Texas law generally prevents a party from invoking a termination clause if that party brings about the circumstances giving rise to the right to terminate. *See Sanderson v. Sanderson*, 109 S.W.2d 744, 749 (Tex. Comm'n App. 1937, opinion adopted); *II Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 265–66 (Tex. App.—San Antonio 2001, pet. denied); *Heritage Life Ins. Co. v. Heritage Group Holding Corp.*, 751 S.W.2d 229, 234 (Tex. App.—Dallas 1988, writ denied); *Rich v. McMullan*, 506 S.W.2d 745, 747 (Tex. Civ. App.—San Antonio

12

1974, writ ref'd n.r.e.); *Sargent v. Highlite Broadcasting Co.*, 466 S.W.2d 866, 867 (Tex. Civ. App.–Austin 1971, no writ).  These cases are distinguishable, however, because they each involved circumstances where the breaching party either wilfully refused to perform its own obligations under the contract or made performance by the other party impossible.  *See Sanderson*, 109 S.W.2d at 749; *II Deerfield Ltd. P'ship*, 41 S.W.3d at 265–66; *Heritage Life Ins. Co.*, 751 S.W.2d at 234; *Rich*, 506 S.W.2d at 747; *Sargent*, 466 S.W.2d at 867. In this case, the trial court heard evidence that Evangel Temple took steps to find other uses for the property before it terminated the Agreement.  Further, the sufficiency of Evangel Temple's effort to maintain the tax exemption presents an evidentiary issue rather than an issue of contract construction.  *See, e.g., Sargent*, 466 S.W.2d at 867 (holding a fact question is present where the evidence showed the seller's president refused to execute the documents necessary to obtain FCC approval for the sale).  We overrule the remainder of Wood Care's first issue.[5]

---

[5] We will address whether Evangel Temple's inability to implement a subsequent tax-exempt use for the facility constitutes a breach of contract in our analysis of Wood Care's second issue.

13

**IV.     Legal and Factual Sufficiency**

In its second issue, Wood Care challenges the legal and factual sufficiency of the trial court's findings that Evangel Temple did not breach the Agreement. Wood Care argues the evidence at trial conclusively established that Evangel Temple breached the Agreement and that the trial court's finding to the contrary is against the great weight and preponderance of the evidence.

Wood Care specifically challenges the sufficiency of the evidence supporting the following findings of fact:

> (16)   After considering all the evidence presented at trial, on [Wood Care's] claims of Breach of Contract and other related allegations concerning the Agreement, [Wood Care] failed to prove by a preponderance of the evidence that [Evangel Temple] breached the Agreement.
>
> (18)   [Evangel Temple] made reasonable and good faith efforts to find another use for the premises that would satisfy the legal requirement that the property was being used for a tax exempt purpose.

Wood Care also challenges the following conclusions of law:

> (6)     Under the facts of this case, termination of the Agreement by [Evangel Temple] without further liability is allowed for the loss of the tax exempt status of the Property;
>
> (7)     Termination by [Evangel Temple] under the facts of this case does not trigger the 10% termination clause in the Agreement;
>
> (10)   [Evangel Temple] did not breach the Agreement by terminating said Agreement due to loss of tax exempt status;

14

(11) All relief requested by [Wood Care] should be denied.

## A. Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 519 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g); *Dominey v. Unknown Heirs & Legal Representatives of Lokomski*, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334

15

(Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

**B. Analysis**

To prevail on a breach of contract claim, a party must establish the following elements: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract;

16

and (4) the plaintiff sustained damages as a result of the defendant's breach. *Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 622–23 (Tex. App.—Fort Worth 2005, no pet.).

Wood Care correctly asserts that the essential question in this case is whether Evangel Temple breached the provision of the Agreement that states: "Both parties agree to cooperate with each other to achieve any available property tax exemption." Wood Care argues the evidence conclusively established Evangel Temple's breach of this provision because Bateman "admitted" that it would have been "possible" to have the Master's Commission education program,[6] worship services, or a bible study moved to the facility.

Wood Care contends Bateman's "admission" is the type the trial court could not disregard. However, Bateman's alleged "admission" is contradicted by his other testimony that the Master's Commission and its leadership moved to the Houston area in January 2006 before the evacuees left the facility in May 2006. Bateman's testimony is also contradicted by Bateman's and Sykes's testimony that the church did not have a bible study group it could send to the facility, that any use of the facility for worship services would be

---

[6] Bateman confirmed it was "hypothetically" possible to run the Masters Commission program at the building, but he testified it was not reasonable to do so.

17

"very limited," and that Evangel Temple did not have any programs that needed additional space. On balance, we do not believe that Bateman's "admission" was the type that prevents reasonable people from differing in their conclusions. *See City of Keller*, 168 S.W.3d at 815–16.[7] Thus, we do not believe Bateman's testimony conclusively established that Evangel Temple breached the Agreement.

Other evidence supports the trial court's findings. Sykes described the facility's limited uses and how its layout prevented Evangel Temple from using the facility for just any purpose. When asked about Wood Care's suggestion of a bible study group at the facility, Sykes explained that a bible study would not be suitable there because the facility's primary use was a "residential-type ministry." Sykes stated that the facility was "not a gathering place, . . . or something that you could just throw something in[;] it had a special purpose." Sykes testified that the facility was not suitable for Evangel Temple's other charitable project, "Angel Food ministry," because it involved receiving and storing large food pallets that were delivered by a semi-trailer truck.

---

[7] Reviewing courts "cannot disregard undisputed evidence that allows of only one logical inference" because "reasonable jurors can reach only one conclusion from it." *City of Keller*, 168 S.W.3d at 814 (citations omitted). However, "[e]vidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *Id.* at 816 (citations omitted).

Although Bateman agreed Evangel Temple "could have" submitted another exemption application for the facility after the evacuees left, he also testified about Evangel Temple's many efforts to find another use and its resulting inability to finalize an agreement with any of the potential organizations for any of the potential tax-exempt uses. Evangel Temple's efforts to find other tax-exempt uses for the facility included meeting with CPS about an interim facility for children, speaking with the county's veteran's office about a veteran's home, communicating with Dallas representatives about a Sudanese refugee facility, speaking with a representative about an annex for women, consulting with a director of the Dallas Dream Center about a place for at-risk teenagers, and providing a tour of the building for a prison-aftercare expert. Concerning Evangel Temple's cooperation with Wood Care to achieve an exemption, Sykes testified that Wood Care suggested a youth bible study group be placed at the vacant building. Sykes stated that Wood Care did not suggest any other uses and did not make any further attempt to cooperate after the evacuees left the facility. Bateman stated that he did not personally have any conversations with Wood Care about a continued use of the property.

The evidence at trial supported the trial court's findings of fact that Evangel Temple did not breach the Agreement and that it "made reasonable and good faith efforts" to find another use for the facility. The trial court's findings

19

are not negated by the evidence; the evidence at trial established that Evangel Temple tried to cooperate by pursuing other tax-exempt uses but could not find a tax-exempt use that fit the facility's layout and size. Furthermore, the trial court drew the correct legal conclusions from the facts that Evangel Temple could terminate the Agreement without further liability under the facts of this case, that Evangel Temple's termination did not trigger the ten-percent termination clause, that Evangel Temple did not breach the Agreement, and that Wood Care's requested relief should be denied.

Based on the foregoing, after reviewing all of the evidence in the light most favorable to the trial court's findings, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we hold that there is legally sufficient evidence to support the trial court's findings that Evangel Temple did not breach the Agreement. Likewise, after considering and weighing all of the evidence pertinent to the trial court's findings, we cannot say that the evidence supporting the trial court's findings is so weak or contrary to the overwhelming weight of all the evidence that it should be set aside and a new trial ordered. We overrule Wood Care's second issue.

## V.    Conclusion

Having overruled both of Wood Care's issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED:  February 18, 2010