02-11-476-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

 

NO. 02-11-00476-CV

 

 


 
 
 NICEY MARABLE
 
 
  
 
 
 APPELLANT
 
 


 

V.

 


 
 
 JOHN MARABLE
 
 
  
 
 
 APPELLEE
 
 


 

 

------------

 

FROM THE
16TH DISTRICT COURT OF DENTON COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I.  Introduction

In a single issue, Appellant Nicey Marable appeals the
trial court’s order granting Appellee John Marable’s request for a protective
order.  We affirm.

II.  Factual and Procedural Background

John filed a pre-divorce application for a protective order against Nicey,
and the trial court heard conflicting testimony about incidents on September 4
and 6, 2011, and about the likelihood of Nicey committing future family
violence.

A.  September
4, 2011 Incident

John testified that on September 4, 2011, he arrived home to find broken
chandeliers, shattered mirrors and glass, his belongings strewn across the
shower, and bleach poured on his bed, clothes, and food.  John admitted that
while he did not see Nicey cause the damage, he believed that she had done it
because she had access to the house, had sent him text messages saying that she
was “going to tear up the house,” and had sent him photographs of the damage.

Nicey testified that she did not cause the damage, that John was falsely
accusing her of doing so because she had refused to sign a modification
agreement to refinance the house, and that John had given a musical group access
to the house before she arrived on September 4, when she found the house in a
“totally destroyed” state.[2]
 Nicey also initially testified that she had not sent John aggressive and
graphic text messages, but when confronted with the language from some of the messages,
Nicey admitted that she had sent text messages to John accusing him of adultery
and demanding that he pay for the divorce and take her name off of the house.[3] 
Nicey asserted that the photo that she had sent to John depicted the bed in the
condition they had left it after making love the night before.

Diane Sheppard, Nicey’s daughter-in-law, testified that she had
accompanied Nicey to the house that day, that the house was a mess, and that Nicey
did not cause the damage while they were there.  However, Diane could not
account for Nicey’s whereabouts the evening before.

B. 
September 6, 2011 Incident

John testified that when he came home for lunch on September 6, 2011, Nicey
came at him with an object that looked like a knife while he was in the garage.
 John ran inside, hid in the attic, and called the police before Nicey sent him
a text message asking him where he was.  John said that he did not sign a
police report because he did not want Nicey to lose her job over the incident.

Nicey testified that she did not threaten John with a knife on September
6, that she had left the house before he arrived, and that she did not own a
knife.

Denton County Deputy Sheriff David Berry testified that he had responded
to the scene on September 6 but that he did not make an arrest because he did
not believe John’s story; he found it unlikely that John was able to escape and
hide in the attic without Nicey seeing him and that Nicey would have sent the
text message under the circumstances that John described.

C.  Future
Family Violence

John testified that Nicey was capable of violence against him because
there was “a lot of tension and stress right now” and because she had committed
violence against him in the past.  He testified that he was afraid of her and
that she had bitten him on the arm; had thrown a cast iron skillet at him; and had
threatened him with a gun by saying that she had a gun in her purse and saying
“pow.”  Nicey testified that John was not afraid of her because they had engaged
in sexual relations on September 1 and 2 and had lunch together on September
12.  She also testified that she does not own a gun and denied any of the
alleged acts of violence.  John denied that he and Nicey had engaged in sexual
relations on September 1 or 2 or that they had eaten lunch together on
September 12.

D.  Trial
Court’s Findings of Fact and Conclusions of Law

The trial court granted the protective order, ordered Nicey to attend
counseling and to pay John’s attorney’s fees, and made the following pertinent
findings of fact:

1.  [John] and
[Nicey] were both at their house . . .  on September 6, 2011.  While at the house,
[Nicey] threatened [John] with a knife.

2.  [John] was in
fear of [Nicey] harming him and hid in the attic until police could arrive.

3.  On September
4, 2011, [Nicey] destroyed property at the . . . house by
pouring bleach on the food in the refrigerator as well as [John’s] bed and
clothes.

4.  [John]
testified that he was fearful of future family violence occurring based on the
past acts of violence by [Nicey].

5.  On other
occasions in the past, [Nicey] has bit [John], thrown a cast iron skillet at
[John], and threatened him with a gun.

6.  [Nicey] would
benefit from counseling with Friends of the Family.

7.  The Court
found [John’s] testimony to be credible.

The trial
court also made the following pertinent conclusions of law:

1.  As [John]
testified credibly to being chased with a knife by [Nicey] and to [Nicey]
poisoning his food with bleach, Family Violence, as defined in Section 71.004
of the Texas Family Code, has occurred.

. . . .

3.  Based on [John’s] testimony that the acts of
violence will continue without a protective order, the Court believes that
family violence is likely to occur in the future.

This appeal followed.

III.  Protective Order

In her sole issue, Nicey complains that
the trial court granted the protective order based on legally and factually
insufficient evidence.  Specifically, Nicey argues that the trial court could
not have found that family violence had occurred or that it was likely to occur
in the future based on the evidence presented at the hearing, and she attacks
the sufficiency of the evidence to support the first five of the trial court’s
fact findings.

A.  Standard of Review

We
review an appellate challenge to the granting of a protective order for the
legal and factual sufficiency of the evidence to support the trial court’s
decision.  Schaban-Maurer v. Maurer-Schaban, 238 S.W.3d 815, 823 (Tex.
App.—Fort Worth 2007, no pet.), disapproved on other grounds by Iliff v.
Iliff, 339 S.W.3d 74, 78 n.2 (Tex. 2011).

Findings of fact entered in a case tried to the court
have the same force and dignity as a jury=s
answers to jury questions.  Anderson v. City of Seven Points, 806 S.W.2d
791, 794 (Tex. 1991).  The trial court=s
findings of fact are reviewable for legal and factual sufficiency of the
evidence to support them by the same standards that are applied in reviewing
evidence supporting a jury=s answer.  Ortiz
v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881
S.W.2d 295, 297 (Tex. 1994).  Conclusions of law may not be challenged for
factual sufficiency, but they may be reviewed to determine their correctness
based upon the facts.  Wood Care Ctrs., Inc. v. Evangel Temple Assembly of
God of Wichita Falls, Tex., 307 S.W.3d 816, 823 (Tex. App.—Fort Worth 2010,
pet. denied); AMX Enters., L.L.P. v. Master Realty Corp., 283 S.W.3d
506, 519 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh=g).

We may sustain a legal sufficiency challenge only when
(1) the record discloses a complete absence of evidence of a vital fact; (2)
the court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact; (3) the evidence offered to prove
a vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact.  Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S.
1040 (1999); Robert W. Calvert, “No Evidence” and “Insufficient Evidence”
Points of Error, 38 Tex. L. Rev. 361, 362–63 (1960).  In determining
whether there is legally sufficient evidence to support the finding under
review, we must consider evidence favorable to the finding if a reasonable
factfinder could and disregard evidence contrary to the finding unless a
reasonable factfinder could not.  Cent. Ready Mix Concrete Co. v. Islas,
228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson, 168 S.W.3d
802, 807, 827 (Tex. 2005).  Anything more than a scintilla of evidence is
legally sufficient to support the finding.  Cont’l Coffee Prods. Co. v.
Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby, 935
S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists if the
evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact.  Rocor Int’l, Inc. v.
Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).

When reviewing an assertion that the evidence is
factually insufficient to support a finding, we set aside the finding only if,
after considering and weighing all of the evidence in the record pertinent to
that finding, we determine that the credible evidence supporting the finding is
so weak, or so contrary to the overwhelming weight of all the evidence, that
the answer should be set aside and a new trial ordered.  Pool v. Ford Motor
Co., 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh’g); Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986); Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  When conducting a factual sufficiency review, a court of appeals
must not merely substitute its judgment for that of the trier of fact.  Golden
Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003)  The trier
of fact is the sole judge of the credibility of witnesses and the weight to be
given to their testimony.  Id.

B.  Analysis

Under the family code, a trial court shall render a
protective order if, after a hearing, it finds that family violence has
occurred and is likely to occur in the future.  Tex. Fam. Code Ann. §§ 81.001, 85.001(b)
(West 2008 & West Supp. 2011).  “Family violence” is

an act by a member of a family or
household against another member of the family or household that is intended to
result in physical harm, bodily injury, assault, or sexual assault or that is a
threat that reasonably places the member in fear of imminent physical harm,
bodily injury, assault, or sexual assault but does not include defensive
measures to protect oneself.

Id. § 71.004 (West 2008).

When the record does not contain evidence specifically
related to a person’s likelihood of future violence, the central focus is
whether evidence of past family violence will support a finding that future
family violence is likely.  Dennis v. Rowe, No. 02-10-00288-CV, 2011 WL
3546618, at *4–5 (Tex. App.—Fort Worth Aug. 11, 2011, no pet.) (mem. op.).  Evidence
showing that a person has engaged in abusive conduct in the past can comprise
legally and factually sufficient evidence that such conduct will continue in
the future.  See id. at *4; In re Epperson, 213 S.W.3d
541, 544 (Tex. App.—Texarkana 2007, no pet.).

Here, with regard to the trial court’s findings of
family violence and the likelihood of future family violence, John testified
that Nicey had destroyed property at the house and had poured bleach on his
food and clothing, had threatened him with a knife, had threatened and attacked
him in the past, and had caused him to fear future violent acts by her.[4]
 Therefore, we conclude that John’s testimony constituted more than a scintilla
of evidence that family violence had occurred and that the trial court could
have reasonably concluded, based on John’s testimony, that Nicey was likely to
commit future acts of family violence.  See Rocor, 77 S.W.3d at 262.

Further, although Nicey specifically challenges the
trial court’s first five findings of fact as supported by factually
insufficient evidence, points out inconsistencies between John’s affidavit and
his testimony at the hearing, and suggests that John orchestrated everything to
make a claim on his insurance policy and to obtain an advantage in the upcoming
divorce, it was for the trial court to determine the witnesses’ credibility,
and the trial court could have found—and did find—John’s testimony more
credible than Nicey’s.[5]
 See Golden Eagle Archery, 116 S.W.3d at 761.  And neither Diane’s nor
Deputy Sheriff Berry’s testimony directly contradicted John’s version of events.
 Here, the evidence supporting the trial court’s findings is not so weak or so
contrary to the overwhelming weight of all the evidence that the trial court’s
decision was clearly in error.  See Pool, 715 S.W.2d at 635.  Therefore,
the evidence is both legally and factually sufficient to support the trial
court’s decision to grant the protective order, and we overrule Nicey’s sole
issue.

IV.  Conclusion

Having overruled Nicey’s sole issue, we affirm the
trial court’s judgment.

 

 

                                                                            BOB
MCCOY

 

PANEL:  WALKER, MCCOY, and GABRIEL,
JJ.

 

DELIVERED:  June 28, 2012









[1]See
Tex. R. App. P. 47.4.





[2]John
admitted that he had loaned the $875,000 house on September 4 to a group to
make a rap video, and the trial court admitted an e-mail from John to Nicey in
which he informed her that he had let a group use the house to make a video of
a local rap artist.





[3]Neither
party offered the actual text messages as exhibits.





[4]Nicey
argues that pouring bleach on food and clothing is not an act of family
violence.  However, the trial court could have reasonably found that the act of
pouring a toxicant on someone’s food is an act intended to result in either
physical harm or to be perceived as a threat that reasonably would place
someone in fear of imminent physical harm or bodily injury.





[5]In
his appellate brief, John likewise points out inconsistencies in Nicey’s testimony. 
At the hearing, John denied that he had orchestrated everything for personal
gain.