

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00476-CV

NICEY MARABLE                                                     APPELLANT

V.

JOHN MARABLE                                                      APPELLEE

------------

## FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In a single issue, Appellant Nicey Marable appeals the trial court's order granting Appellee John Marable's request for a protective order. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

John filed a pre-divorce application for a protective order against Nicey, and the trial court heard conflicting testimony about incidents on September 4 and 6, 2011, and about the likelihood of Nicey committing future family violence.

### A. September 4, 2011 Incident

John testified that on September 4, 2011, he arrived home to find broken chandeliers, shattered mirrors and glass, his belongings strewn across the shower, and bleach poured on his bed, clothes, and food. John admitted that while he did not see Nicey cause the damage, he believed that she had done it because she had access to the house, had sent him text messages saying that she was "going to tear up the house," and had sent him photographs of the damage.

Nicey testified that she did not cause the damage, that John was falsely accusing her of doing so because she had refused to sign a modification agreement to refinance the house, and that John had given a musical group access to the house before she arrived on September 4, when she found the house in a "totally destroyed" state.[2] Nicey also initially testified that she had not sent John aggressive and graphic text messages, but when confronted with the language from some of the messages, Nicey admitted that she had sent text

---

[2]John admitted that he had loaned the $875,000 house on September 4 to a group to make a rap video, and the trial court admitted an e-mail from John to Nicey in which he informed her that he had let a group use the house to make a video of a local rap artist.

2

messages to John accusing him of adultery and demanding that he pay for the divorce and take her name off of the house.[3] Nicey asserted that the photo that she had sent to John depicted the bed in the condition they had left it after making love the night before.

Diane Sheppard, Nicey's daughter-in-law, testified that she had accompanied Nicey to the house that day, that the house was a mess, and that Nicey did not cause the damage while they were there. However, Diane could not account for Nicey's whereabouts the evening before.

## B. September 6, 2011 Incident

John testified that when he came home for lunch on September 6, 2011, Nicey came at him with an object that looked like a knife while he was in the garage. John ran inside, hid in the attic, and called the police before Nicey sent him a text message asking him where he was. John said that he did not sign a police report because he did not want Nicey to lose her job over the incident.

Nicey testified that she did not threaten John with a knife on September 6, that she had left the house before he arrived, and that she did not own a knife.

Denton County Deputy Sheriff David Berry testified that he had responded to the scene on September 6 but that he did not make an arrest because he did not believe John's story; he found it unlikely that John was able to escape and

---

[3]Neither party offered the actual text messages as exhibits.

3

hide in the attic without Nicey seeing him and that Nicey would have sent the text message under the circumstances that John described.

## C.  Future Family Violence

John testified that Nicey was capable of violence against him because there was "a lot of tension and stress right now" and because she had committed violence against him in the past.  He testified that he was afraid of her and that she had bitten him on the arm; had thrown a cast iron skillet at him; and had threatened him with a gun by saying that she had a gun in her purse and saying "pow."  Nicey testified that John was not afraid of her because they had engaged in sexual relations on September 1 and 2 and had lunch together on September 12.  She also testified that she does not own a gun and denied any of the alleged acts of violence.  John denied that he and Nicey had engaged in sexual relations on September 1 or 2 or that they had eaten lunch together on September 12.

## D.  Trial Court's Findings of Fact and Conclusions of Law

The trial court granted the protective order, ordered Nicey to attend counseling and to pay John's attorney's fees, and made the following pertinent findings of fact:

> 1.  [John] and [Nicey] were both at their house . . .  on September 6, 2011.  While at the house, [Nicey] threatened [John] with a knife.

> 2.  [John] was in fear of [Nicey] harming him and hid in the attic until police could arrive.

4

3.  On September 4, 2011, [Nicey] destroyed property at the . . . house by pouring bleach on the food in the refrigerator as well as [John's] bed and clothes.

4.  [John] testified that he was fearful of future family violence occurring based on the past acts of violence by [Nicey].

5.  On other occasions in the past, [Nicey] has bit [John], thrown a cast iron skillet at [John], and threatened him with a gun.

6.  [Nicey] would benefit from counseling with Friends of the Family.

7.  The Court found [John's] testimony to be credible.

The trial court also made the following pertinent conclusions of law:

1.  As [John] testified credibly to being chased with a knife by [Nicey] and to [Nicey] poisoning his food with bleach, Family Violence, as defined in Section 71.004 of the Texas Family Code, has occurred.

. . . .

3.  Based on [John's] testimony that the acts of violence will continue without a protective order, the Court believes that family violence is likely to occur in the future.

This appeal followed.

### III.  Protective Order

In her sole issue, Nicey complains that the trial court granted the protective order based on legally and factually insufficient evidence.  Specifically, Nicey argues that the trial court could not have found that family violence had occurred or that it was likely to occur in the future based on the evidence presented at the hearing, and she attacks the sufficiency of the evidence to support the first five of the trial court's fact findings.

## A. Standard of Review

We review an appellate challenge to the granting of a protective order for the legal and factual sufficiency of the evidence to support the trial court's decision. *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 823 (Tex. App.—Fort Worth 2007, no pet.), *disapproved on other grounds by Iliff v. Iliff*, 339 S.W.3d 74, 78 n.2 (Tex. 2011).

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994). Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. *Wood Care Ctrs., Inc. v. Evangel Temple Assembly of God of Wichita Falls, Tex.*, 307 S.W.3d 816, 823 (Tex. App.—Fort Worth 2010, pet. denied); *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 519 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a

6

mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*,

7

395 S.W.2d 821, 823 (Tex. 1965).  When conducting a factual sufficiency review, a court of appeals must not merely substitute its judgment for that of the trier of fact.  *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)  The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony.  *Id.*

## B.  Analysis

Under the family code, a trial court shall render a protective order if, after a hearing, it finds that family violence has occurred and is likely to occur in the future.  Tex. Fam. Code Ann. §§ 81.001, 85.001(b) (West 2008 & West Supp. 2011).  "Family violence" is

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault but does not include defensive measures to protect oneself.

*Id*. § 71.004 (West 2008).

When the record does not contain evidence specifically related to a person's likelihood of future violence, the central focus is whether evidence of past family violence will support a finding that future family violence is likely.  *Dennis v. Rowe*, No. 02-10-00288-CV, 2011 WL 3546618, at *4–5 (Tex. App.— Fort Worth Aug. 11, 2011, no pet.) (mem. op.).  Evidence showing that a person has engaged in abusive conduct in the past can comprise legally and factually

8

sufficient evidence that such conduct will continue in the future. *See id.* at *4; *In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.).

Here, with regard to the trial court's findings of family violence and the likelihood of future family violence, John testified that Nicey had destroyed property at the house and had poured bleach on his food and clothing, had threatened him with a knife, had threatened and attacked him in the past, and had caused him to fear future violent acts by her.[4] Therefore, we conclude that John's testimony constituted more than a scintilla of evidence that family violence had occurred and that the trial court could have reasonably concluded, based on John's testimony, that Nicey was likely to commit future acts of family violence. *See Rocor*, 77 S.W.3d at 262.

Further, although Nicey specifically challenges the trial court's first five findings of fact as supported by factually insufficient evidence, points out inconsistencies between John's affidavit and his testimony at the hearing, and suggests that John orchestrated everything to make a claim on his insurance policy and to obtain an advantage in the upcoming divorce, it was for the trial court to determine the witnesses' credibility, and the trial court could have

---

[4]Nicey argues that pouring bleach on food and clothing is not an act of family violence. However, the trial court could have reasonably found that the act of pouring a toxicant on someone's food is an act intended to result in either physical harm or to be perceived as a threat that reasonably would place someone in fear of imminent physical harm or bodily injury.

9

found—and did find—John's testimony more credible than Nicey's.[5]  *See Golden Eagle Archery*, 116 S.W.3d at 761.   And neither Diane's nor Deputy Sheriff Berry's testimony directly contradicted John's version of events.   Here, the evidence supporting the trial court's findings is not so weak or so contrary to the overwhelming weight of all the evidence that the trial court's decision was clearly in error.  *See Pool*, 715 S.W.2d at 635.   Therefore, the evidence is both legally and factually sufficient to support the trial court's decision to grant the protective order, and we overrule Nicey's sole issue.

## IV.  Conclusion

Having overruled Nicey's sole issue, we affirm the trial court's judgment.


BOB MCCOY

PANEL:  WALKER, MCCOY, and GABRIEL, JJ.

DELIVERED:  June 28, 2012

---

[5]In his appellate brief, John likewise points out inconsistencies in Nicey's testimony.  At the hearing, John denied that he had orchestrated everything for personal gain.