

# NUMBER 13-20-00351-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LEWIS HAAG,                                                          Appellant,

v.

AOT ENERGY AMERICA LLC,                                             Appellee.

On appeal from the 55th District Court
of Harris County, Texas.

# MEMORANDUM OPINION

Before Justices Hinojosa, Tijerina, and Silva
Memorandum Opinion by Justice Tijerina

By one issue, appellant Lewis Haag appeals the trial court's grant of appellee AOT Energy America LLC's (AOT) motion for summary judgment and its denial of his cross motion for summary judgment. We affirm.[1]

---

[1] This appeal was transferred from the Fourteenth Court of Appeals in Houston, Texas pursuant to

## I.    PERTINENT FACTS

Haag originally worked for Astra Oil Company LLC as a trader. Subsequently, AOT purchased Astra and offered Haag employment in a letter (the Offer Letter) stating, in pertinent part, the following:

> On behalf of [AOT], we are pleased to offer you full-time employment . . . subject to the terms and conditions of this letter.
>
> This offer is contingent upon your resignation from Astra Oil Company LLC, effective as of July 31, 2016, at 5:00 p.m. A draft resignation letter is enclosed with this offer letter. If you do not resign from your position with Astra Oil Company by 5:00 p.m. on July 31, 2016, this offer will expire at that time. Your Start Date with [AOT] will be August 1, 2016.
>
> Position. Your position with [AOT] will be Distillates Trader. Your title is subject to change at [AOT's] discretion.
>
> Salary. You will receive a monthly base salary of $16,666.67 (which equals $200,000 annually) paid in accordance with [AOT's] regular payroll practices. Your salary, as well as any other compensation from [AOT], will be subject to applicable payroll withholding and deductions. You will be employed in a salaried, exempt position. This means that you will be paid your salary regardless of the number of hours worked in a workweek, subject to certain limitations.
>
> Performance Bonus. You will be eligible to receive an annual discretionary bonus for any full year of service. For calendar year 2016, your bonus will be calculated based on the time you spent in 2016 working for Astra Oil Company LLC, as well as for [AOT]. [AOT], in its sole discretion, will determine the actual amount of any bonus earned, based on your performance and contributions, [AOT's] overall business and financial performance, as well as [AOT's] Trader Bonus Rules applicable at the time. No performance bonus is guaranteed, and performance bonus criteria are subject to change at [AOT's] discretion. You must be employed on the day bonuses are paid to receive a performance bonus.
>
> . . . .
>
> Miscellaneous. Like all [AOT] employees, you will be required, as a

---

a docket-equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

condition to your employment, to sign and abide by [AOT's] other policies, including the Code of Conduct and Employee Handbook. You also will be required to comply with all other [AOT] policies and procedures that may be in effect from time to time. This letter sets forth all of the terms relating to your employment by [AOT] and supersedes all other discussions, agreements or representations, whether written or oral, about that topic, except as provided herein.

If this offer is acceptable, please indicate so by signing below.

If you have any questions or if there is any way we can help you further, please do not hesitate to call. We look forward to having you as part of [AOT].

Haag signed the letter on August 1, 2016 and began working as a trader for AOT.

According to Haag, in 2017, he was entitled to a bonus payment of $1.1 million. Haag claims that AOT only paid 75% of this amount. Haag demanded payment of the remainder of his 2017 bonus; however, AOT did not pay him. Haag filed suit for breach of contract seeking $266,458, interest, and attorney's fees. In his petition, Haag claimed that AOT told him "in writing and verbally that it would pay the remainder [of the bonus] as soon as it had resolved certain business issues." Haag did not identify the contract in his petition; however, in his motion for summary judgment, Haag clarified that AOT breached a document entitled "Group Bonus Rules for Traders" (Bonus Rules) explaining the procedures that AOT applied in calculating and awarding the bonuses to its traders in 2017. The Bonus Rules are part of the summary judgment evidence.

AOT filed a traditional motion for summary judgment arguing that as a matter of law, the Offer Letter

clearly states that any bonus payment would be at the "sole discretion" of AOT and that "[n]o performance bonus is guaranteed." And AOT's bonus guidelines, to the extent they constitute a promise, are not supported by valid consideration. Finally, even if Haag was contractually entitled to a

3

bonus payment, he was not employed by AOT on the day bonuses were paid, which Haag's employment offer letter makes clear is a condition precedent to any bonus payment.

Haag filed a competing traditional motion for summary judgment contending that the Bonus Rules negated AOT's claim that payment of the bonus was discretionary. Haag argued, "When an employer promises to pay a bonus according to a formula, once the employee performs the work, he has earned the bonus. An employer cannot avoid the obligation by using the label 'discretionary.'" Haag filed a response to AOT's motion for summary judgment arguing,

> AOT's calculation and payment of 75% of Haag's 2017 bonus using a formula in a written contract, its admission that it owed Haag $1.18 Million per the formula, and its promise to pay the remaining 25% pursuant to that formula contradicts its belated claim that it had no contract, and that Haag's bonus was discretionary.

Haag further argued that the Offer Letter was relevant only to the extent that it stated that AOT could "establish new bonus criteria," and "[i]n 2017 AOT established new bonus criteria by enacting detailed rules and a specific formula for how Haag's 2017 bonus would be calculated and paid." Haag asserted that the Bonus Rules were not discretionary stating:

> AOT amended the terms of the offer letter in 2017 when it promised Haag to pay him a bonus according to a formula in the Bonus Rules. The 2017 Bonus Rules contained a specific formula and said that bonuses "will be paid." It did not say, bonuses "might be paid," or that AOT "had discretion" whether to use the formula. AOT confirmed this promise in the subsequent communications to another trader and when it took the $7.8 Million in profits Haag generated, and then paid 75% of his bonus per the formula in the bonus contract. Having already performed 75% of the contract, AOT should not be allowed to change its mind and claim it was not bound by its promises in the 2017 Bonus Rules.

4

Haag claimed that the Bonus Rules became an enforceable unilateral contract when he performed, he was employed when the bonus was due to be paid, and he was not required to continue his employment indefinitely or after AOT committed the breach.

AOT responded to Haag's motion for summary judgment arguing that Haag's contention that the Bonus Rules constitute a separate and enforceable contract entitling him to an additional bonus payment "completely ignores the written terms of his employment as described in" the Offer Letter, which "makes clear that payment of any bonus is at the sole discretion of AOT . . . ." Moreover, AOT claimed that the Bonus Rules could not be construed as a contract because Haag offered no consideration. In the alternative, AOT stated that even assuming the Bonus Rules constituted a contract, Haag failed to qualify for an additional bonus payment under the Bonus Rules because "[t]he evidence shows that Haag's 2018 bonus base was negative $2.8 million."

The trial court denied Haag's motion for summary judgment and granted AOT's motion for summary judgment. This appeal ensued.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the nonmovant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). A defendant seeking a traditional motion for summary judgment

5

must either conclusively disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied). When both parties file competing motions for summary judgment, after reviewing the evidence presented by both sides, we "render the judgment the trial court should have rendered." *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641–42 (Tex. 2015) (citing *Comm'rs Ct. of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to party against whom the summary judgment was rendered, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions considering the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

"The elements of a breach of contract claim are (1) the existence of a valid contract between plaintiff and defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage [from] the breach." *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). We construe an unambiguous contract under a de

6

novo standard of review. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). Ordinarily, we enforce an unambiguous contract as written because we presume that the contract reflects the intent of the contracting parties. *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014); *see Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 501 (Tex. 2015) (explaining that we presume that parties to a written agreement have knowledge of and understand its contents). We are primarily concerned with ascertaining the true intent of the parties as expressed in the instrument. *Wood Care Ctrs., Inc. v. Evangel Temple Assembly of God of Wichita Falls, Tex.*, 307 S.W.3d 816, 820 (Tex. App.—Fort Worth 2010, pet. denied). We determine the parties' intent of an unambiguous contract's meaning from the four corners of the document without the aid of extrinsic evidence. *Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 595 (Tex. App.—Dallas 2015, pet. denied). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

### III.   DISCUSSION

The summary judgment evidence undisputedly shows that Haag accepted AOT's Offer Letter when he signed it and began working under its terms. *See Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013) ("Typically, a party manifests its assent by signing an agreement."). The Offer Letter states that it "sets forth all of the terms relating to [Haag's] employment by [AOT] and supersedes all other discussions, agreements or representations, whether written or oral, about that topic, except as provided herein."[2]

---

[2] This is a merger clause, which "is '[a] provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the

The Bonus Rules on the other hand do not contain any language setting forth the terms of Haag's employment or the criteria for determining how the trader earns the bonus. The Bonus Rules merely set out the formula for calculating the amount of the bonus to be awarded. In addition, unlike the Offer Letter, neither party signed the Bonus Rules, and there is no promissory language or consideration mentioned in the Bonus Rules.

The elements of a valid contract are (1) an offer, (2) acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Prods., Inc.*, 97 S.W.3d at 636. The Offer Letter contains each element of a valid contract concerning the terms of Haag's employment, while the Bonus Rules in isolation contain none of the elements.

Moreover, the Offer Letter clearly states that AOT would determine the amount of Haag's bonus based on, among other things, the Bonus Rules applicable at the time. "Documents incorporated into a contract by reference become part of that contract." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (original proceeding) (per curiam). "Documents 'pertaining to the same transaction may be read together,' even if they are executed at different times and do not reference each other, and 'courts may construe all the documents as if they were part of a single, unified instrument.'" *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) (original proceeding) (per curiam). Thus, because the Offer Letter incorporated the Bonus Rules applicable at the time, we conclude that "both instruments [the Offer Letter and the Bonus Rules applicable at the time] must be read

written document.'" *IKON Office Sols., Inc. v. Eifert*, 125 S.W.3d 113, 126 n.6 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

and construed together." *In re C & H News Co.*, 133 S.W.3d 642, 645–46 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.).

The Offer Letter specifies that AOT and Haag agreed that he would "be eligible to receive an annual *discretionary* bonus for any full year of service," that for the 2016 calendar year, Haag's bonus would be calculated based on the time he spent working for Astra as well as AOT, and that "in its sole discretion" AOT would "determine" the amount of Haag's bonus, "based" on (1) his "performance and contributions, [(2) AOT's] overall business and financial performance, as well as [(3) AOT's] Trader Bonus Rules *applicable at the time.*" (Emphasis added). Thus, according to the Offer Letter, Haag was eligible for an annual "discretionary bonus" for any full year of service.

The use of the terms *eligible* and *discretionary* in the contract conveys that AOT was not promising that Haag would absolutely receive an annual bonus but simply that AOT may have chosen to award a bonus to Haag in its discretion. *See Eligible*, MERRIAM-WEBSTER.COM DICTIONARY, *https://www.merriam-webster.com/dictionary/eligible* (last visited Jan. 11, 2022) (defining eligible as "qualified to participate or be chosen"); *Discretionary*, MERRIAM-WEBSTER.COM DICTIONARY *https://www.merriam-webster.com/dictionary/discretionary* (last visited Jan. 11, 2022) (defining "discretionary" as "left to individual choice or judgment: exercised at one's own discretion"); *see also Lewis v. Vitol*, S.A., No. 01-05-00367-CV, 2006 WL 1767138, at \*4–5 (Tex. App.—Houston [1st Dist.] June 29, 2006, no pet.) (mem. op.) (concluding that the contract's use of the term "'eligible' is a limitation that is not present in any of the other compensation provisions, thereby indicating that [the employee] is not guaranteed a bonus, but is

9

qualified, or eligible, to be considered for a bonus," and the phrase "[t]he bonus is at the sole discretion of the management" did not "contractually entitle[]" an employee to a bonus).

The Offer Letter stated: "No performance bonus is guaranteed, and performance bonus criteria are subject to change at [AOT's] discretion." Thus, by signing the Offer Letter, Haag agreed that AOT had discretion to change the performance bonus criteria, which included the Bonus Rules applicable at the time and that an annual bonus was not guaranteed. Accordingly, we conclude that AOT met its burden of showing that as a matter of law, it had discretion to change the Bonus Rules at any time and Haag did not raise an issue of material fact negating the grant of AOT's motion for summary judgment. *See* TEX. R. CIV. P. 166a; *Nixon*, 690 S.W.2d at 548. Thus, the trial court properly granted AOT's motion for summary judgment and denied Haag's motion for summary judgment. We overrule Haag's sole issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
27th day of January, 2022.