# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


**NO. 2-08-383-CV**

RSI INTERNATIONAL, INC.                                          APPELLANTS
AND ESSEX INSURANCE
COMPANY

V.

CTC TRANSPORTATION, INC.                                          APPELLEE

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

# OPINION

------------

## I. INTRODUCTION

Appellants RSI International, Inc. and Essex Insurance Company appeal

the judgment entered after a bench trial ordering them to pay Appellee CTC

Transportation, Inc. $54,604.91 plus interest and attorney's fees. The primary

issue that we address is whether a coinsurance provision in a motor truck cargo

liability policy issued by Essex to CTC is ambiguous. Because we hold that, as

a matter of law, the coinsurance provision is not ambiguous, we will reverse the trial court's judgment and render judgment that CTC recover only $36,739.49 from Appellants.

## II. BACKGROUND

CTC specializes in hauling heavy-duty equipment. CTC wanted to insure the equipment it hauled and spoke to Charles Lindamood, an agent with RSI, about obtaining insurance. Lindamood obtained a motor truck cargo liability policy for CTC with Essex. Essex issued identical policies to CTC each year from 2001 through 2005; each policy contained the same coinsurance provision. The policy CTC obtained for coverage from April 28, 2005 to April 28, 2006 (hereinafter this policy is referred to as "the policy" because it is the one at issue) provided for a 1% deductible, a $500,000 limit of loss, and the same coinsurance provision as CTC's prior motor cargo liability policies. The coinsurance provision—which will be set forth in its entirety later in this opinion—generally provided that Essex would not be liable for a greater percentage of CTC's liability for loss than the limit of the policy to the total value of the cargo at the time of the loss.

On November 10, 2005, one of CTC's tractors was transporting a large crane. The value of the crane being transported was $700,000. During the transport, the crane hit a bridge as the tractor passed under the bridge. The

2

cost to repair the crane was stipulated to be $61,604.91. CTC submitted a claim to Essex under the policy.

Joel Voelkner of York Claims Services, Inc. produced a report for Essex calculating CTC's settlement under the policy as follows:

> In review of the load, its value was $700,000. In review of the policy, it maintained a $500,000 limit for cargo. As such, this would indicate a 71% co-insurance penalty, which reduces the amount payable from $61,604.91 to $43,739.49 (a difference of $17,865.42). This amount i[s] further reduced by the 1% deductible, which in this case would be $7,000. This provides us with a final settlement figure of $36,739.49.

After CTC learned of the proposed settlement amount, CTC's attorney wrote a letter to Lindamood and Voelkner stating that the "co-insurance penalty" of $17,865.42 was "totally unacceptable" to CTC. CTC indicated that it would agree to a reduction of Essex's payment for the $61,604.91 loss only by the $7,000 deductible; CTC claimed that Essex was required to pay the remaining $54,604.91. Because the parties could not reach an agreement on the settlement amount required under the policy, CTC filed suit, alleging that Appellants had materially breached the terms and conditions of the insuring agreement.

After a bench trial, the trial court entered findings of fact and conclusions of law and signed a final judgment. Among its findings, the trial court found (1) that the 100% coinsurance provision provides in sum or substance that

3

Essex would not be liable for loss or damage to cargo on any noninsured vehicle because the word "vehicle" was not in bold face type and (2) that Essex's proposed interpretation of the exclusion would essentially void the provision providing for the limit of loss. In its conclusions of law, the trial court concluded that the "100% Co-Insurance" provision of the policy "is unintelligible as written, is vague, confusing and ambiguous"; that Essex failed to provide CTC with the insurance coverage CTC had purchased; that Essex was liable for CTC's damage of $61,604.91, less the applicable deductible of $7,000 (1% of the value of the cargo), for a total award to CTC of $54,604.91;[1] and that CTC was entitled to recover its reasonable and necessary attorneys' fees in the total sum of $40,000. This appeal followed.

### III. THE COINSURANCE PROVISION IS NOT AMBIGUOUS

In their first issue, Appellants argue that the trial court erred by finding the coinsurance provision ambiguous as a matter of law. In their other three issues, Appellants challenge the legal and factual sufficiency of several findings of fact and conclusions of law. Because Appellants' first issue is dispositive, and in substance encompasses the remainder of their issues, we will address it first.

---

[1] The trial court concluded that CTC's policy provided "insurance coverage for the first $500,000 of any damage, less the applicable deductible."

4

**A. Standard of Review**

A contract is ambiguous only if, after the application of established rules of construction, an agreement is still susceptible to more than one reasonable meaning. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). If a contract is unambiguous, its terms can be interpreted as a matter of law by the court. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). When an issue turns on a question of law, we do not give any particular deference to legal conclusions of the trial court and apply a de novo standard of review. *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 868 (Tex. App.—Austin 2001, pet. denied).

When an appellate court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the appellate court is obligated to interpret the contract as a matter of law. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999); *Loaiza v. Loaiza*, 130 S.W.3d 894, 905 (Tex. App.—Fort Worth 2004, no pet.). Thus, here, we review de novo the trial court's conclusion of law that the "100% Co-Insurance" provision of the policy "is unintelligible as written, is vague, confusing and ambiguous." And if we conclude that it is not ambiguous, we are obligated to interpret the contract as a matter of law. *Loaiza*, 130 S.W.3d at 905; *see also Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex. 1992).

5

**B.  Rules of Construction**

We construe insurance policies according to the same rules of construction that apply to contracts generally.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008).  Enforcing the parties' expressed intent is our primary concern.  *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).  Policy terms are given their ordinary and commonly understood meaning unless the policy itself shows that the parties intended a different, technical meaning.  *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990).  "No one phrase, sentence, or section [of the policy] should be isolated from its setting and considered apart from the other provisions."  *Forbau*, 876 S.W.2d at 134.

Not every difference in the interpretation of a contract creates an ambiguity.  *See id.*  The mere disagreement over the meaning of a particular provision in a contract does not make it ambiguous.  *GTE Mobilnet of S. Tex. Ltd. P'ship v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 289 n.1 (Tex. App.—Houston [1st Dist.] 1997, writ denied).  In order for an ambiguity to exist when the parties advance conflicting interpretations, both interpretations must be reasonable.  *See Columbia Gas Transmission Corp.*, 940 S.W.2d at 589.

**C.  The Policy's Provisions**

6

The insurance policy that Essex issued to CTC contained the following provisions:

IV. **LIMIT OF LOSS** $500,000.00 (As defined in Insuring Agreement)

V. **Deductible (per paragraph 5)** $1% of value of load but not less than $1,000.00 any one occurrence. Refrigeration Breakdown Deductible $N/A

. . . .

## INSURING AGREEMENTS

. . . .

**Limit of Loss.** This Company will be liable for the least of the following:

Actual cash value of cargo at the point of shipment on the date of loss;

The Insured's legal liability under the bill of lading or shipping receipt;

The cost to repair;

but in no event for more than the indicated Limit of Liability shown in the Declarations for each vehicle or terminal and not to exceed the Limit of Loss shown in the Declarations for any claims arising out of any one loss involving (1) two or more **vehicles**; (2) one or more **terminals** and one or more **vehicles**; (3) any other combination or circumstance.

**100% Coinsurance.** The Company shall in no event be liable under the policy with respect to the insured's liability for loss or damage to cargo on any vehicle or at any terminal described in the Declarations for a greater percentage of any loss or damage than the respective limit(s) applicable under this Policy bears to the total value of the cargo on the **vehicle** or at the **terminal** at the time of the loss or damage, whether damaged or not.

**D. The Parties' Arguments**

7

Appellants argue that the coinsurance clause was not ambiguous as a matter of law. Specifically, Appellants argue that the trial court totally disregarded and "wrote out of the [p]olicy the coinsurance language" instead of construing it in light of the policy's limit of loss section. Appellants state that in looking at the "Insuring Agreement" for the definition of "Limit of Loss," there is nothing ambiguous about how to determine the limit of loss; it is simply the least of the three possible amounts, which in this case was the $61,604.91 cost to repair the crane. Then, because under the coinsurance provision Essex is not responsible "for a greater percentage of any loss or damage than the respective limit(s) applicable under this [p]olicy bears to the total value of the cargo," the $500,000 applicable limit is divided by the $700,000 total value of the cargo (the crane) that CTC was carrying at the time of the accident to obtain Essex's liability for the loss, which comes to 71%. After adjusting the $61,604.91 by 71%, then the $7,000 deductible is subtracted because the policy states that Essex "shall have no obligation under this form until the claim exceeds the deductible" and provides that one must apply the deductible to "each adjusted claim." Appellants' calculation produces a figure of $36,739.49 and tracks with the calculation that Voelkner used.

CTC, on the other hand, argues that ambiguity exists on the face of the policy not only because the parties disagree on its interpretation but because,

8

according to CTC, the policy is not susceptible to any reasonable interpretation. CTC asserts two arguments in support of the position that the policy, specifically the coinsurance provision, is not susceptible to any reasonable interpretation.

First, CTC claims no reasonable interpretation is possible because the coinsurance provision uses the term "vehicle" and the term "**vehicle.**" CTC argues that "vehicle" necessarily refers to an uninsured vehicle because "**vehicle**" is a defined term in the policy.[2] "**Vehicle**" is defined in the "**DEFINITIONS**" section of the policy as "[a] power unit specifically scheduled on the Declarations and any trailer while physically attached to the power unit, or a detached trailer specifically scheduled on the Declarations. If blanket coverage is provided, vehicle shall include all power units and trailers attached or otherwise operated by the insured." CTC argues that because the term "**vehicle**" is a defined term, it cannot be used interchangeably with "vehicle." And, according to CTC, construing the term "vehicle" in the coinsurance provision to mean an uninsured vehicle and giving the term "**vehicle**" in the

---

[2] As set forth above in the coinsurance provision, when that provision uses the unbolded term "vehicle," it is modified by "described in the Declarations," indicating that at least the coinsurance provision's use of the unbolded term "vehicle" referred to a vehicle identified on the declarations page as a covered vehicle not, as CTC argues, an uninsured vehicle.

coinsurance provision its defined meaning, the coinsurance provision is unintelligible, vague, confusing, and ambiguous, as determined by the trial court.

Second, CTC points to two alleged conflicts between the application for insurance completed by Lindamood and the policy issued. Specifically, CTC contends that the "maximum exposure per vehicle" of $500,000 Lindamood wrote on the application is synonymous with the $500,000 limit of loss in the policy but is "diametrically opposed to the 'max value' of the commodity from the application and its inclusion in the 100% coinsurance provision." Thus, in arguing that the policy is subject to no reasonable interpretation, CTC points to alleged disparities between its application for insurance and the actual insurance policy.

### E. Analysis

The starting point of our analysis is the instrument itself. *See Coker*, 650 S.W.2d at 393 ("If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."). Applying the rules of construction to the instrument itself, we must construe the insurance policy to give effect to all of the policy's terms so that none will be rendered meaningless. *Id.* at 393. CTC's construction of the policy to distinguish

10

between the terms "vehicle" and "**vehicle**" in the coinsurance provision is unreasonable because it renders the entire coinsurance provision meaningless; CTC essentially concedes this point by claiming that the coinsurance provision (as interpreted by CTC) is unintelligible as written, vague, confusing, and ambiguous. *See Fisher v. N. Am. Life & Cas. Co.*, No. 05-93-01723-CV, 1995 WL 45640, at *4 (Tex. App.—Dallas Jan. 31, 1995, no writ) (not designated for publication) (holding that "[t]o adopt [insured's] interpretation would be to render this general limitation provision meaningless"). Moreover, CTC's construction is not supported by the plain language of the coinsurance provision itself because that provision provides that it applies to "any vehicle . . . described in the Declarations"[3] when the total value of the cargo exceeds the $500,000 policy limit.

Giving the terms of the coinsurance provision their plain meanings, construing the coinsurance provision so as to harmonize it with the entire motor truck cargo liability policy, and giving effect to each clause of the policy, the coinsurance provision is subject to only one reasonable interpretation and that

---

[3] And though not clearly readable on the "Automobile Loss Notice," it appears that the vehicle involved in the accident was a 2001 Kenworth tractor with an identification number that looks remarkably similar to "057031." This would match the one and only 2001 Kenworth tractor shown on the Declarations page of the policy, which lists the "**vehicles**" covered by the policy.

is the interpretation urged by Appellants. Accordingly we hold that the coinsurance provision is not ambiguous as a matter of law. *See Loaiza*, 130 S.W.3d at 905 ("A contract is ambiguous only if, after the application of established rules of construction, an agreement is still susceptible to more than one reasonable meaning") (citing *DeWitt County Elec. Coop., Inc.*, 1 S.W.3d at 100; *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589); *Yancey v. Floyd W. & Co.*, 755 S.W.2d 914, 920 (Tex. App.—Fort Worth 1988, writ denied) (holding that because there was only one reasonable construction of the language in the policies, no ambiguity existed within the policies at issue). Accordingly, we construe the policy as a matter of law; the policy mandates the calculations propounded by Appellants.

Based on this holding, we cannot agree with CTC's contention that we may rely on testimony of the contracting parties' intent in construing the policy or that the language in the application for insurance may conflict with, and create ambiguity in, the policy. *Cf. Rutherford v. Randal*, 593 S.W.2d 949, 953 (Tex. 1980) ("The absence of an ambiguity in the deed negates all justification for the consideration of extrinsic evidence concerning the original intent of the grantor . . . . Under these circumstances, this court will limit its search for the grantor's intent to that intent which was expressed within the four corners of the deed."). CTC's subjective belief as to what the contracting

12

parties intended to be covered under the policy limits is immaterial, insofar as such intentions are not found in, and in fact add to, the plain language of the policy itself. *See Koelsch v. Indus. Gas Supply Corp.*, 132 S.W.3d 494, 498 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *see also Gary E. Patterson & Assocs., P.C. v. Holub*, No. 01-04-00108-CV, 2008 WL 100233, at *11 (Tex. App.—Houston [1st Dist.] Jan. 10, 2008, pet. denied) (providing that "'[u]nder the parol evidence rule, . . . all prior negotiations and agreements with regard to the same subject matter are excluded from consideration'" and that "'a written instrument presumes that all prior agreements relating to the transaction have been merged into it and will be enforced as written and cannot be added to, varied, or contradicted by parol testimony'"). We sustain Appellants' first issue.

Because we have sustained Appellants' first issue claiming that the coinsurance provision is unambiguous as a matter of law, we likewise sustain Appellants' third and fourth issues[4] challenging the trial court's contrary conclusions of law, including conclusion of law number 7 that awarded attorney's fees to CTC for breach of contract. *See Newton v. Meade*, 143

---

[4] We need not reach Appellants' second issue because the challenged finding of fact relates to the ambiguity of the insurance provision and has no legal significance in light of our holding that the provision is unambiguous as a matter of law.

S.W.3d 571, 575 (Tex. App.—Dallas 2004, no pet.) (holding that when no breach of contract claim is established, party may not recover attorney's fees under Texas Civil Practice and Remedies Code section 38.001(8)). We reverse the trial court's judgment and render judgment pursuant to the unambiguous provisions of the policy that CTC recover only $36,739.49 from Appellants and that CTC take nothing on its claim for attorneys' fees.

## IV. CONCLUSION

Having sustained Appellants' issues that are necessary for disposition of the appeal, we reverse the trial court's judgment and render judgment that CTC recover only $36,739.49 from Appellants and that CTC take nothing on its claim for attorneys' fees.

SUE WALKER
JUSTICE

PANEL: LIVINGSTON, WALKER, and MEIER, JJ.

DELIVERED: June 18, 2009