

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00168-CV

BNSF RAILWAY COMPANY (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO THE BURLINGTON NORTHERN, INC., BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY AND ATCHISON TOPEKA AND SANTA FE RAILWAY COMPANY)

APPELLANT

V.

LEONARD A. BACA

APPELLEE

----------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 048-267301-13

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

In this permissive interlocutory appeal involving a claim under the Federal Employers Liability Act (FELA), Appellee Leonard A. Baca alleges that while working for Appellant BNSF's predecessor in interest, he was exposed to asbestos, causing him to develop asbestosis. *See* 45 U.S.C.A. §§ 51–60 (West 2007). Baca retained as an expert Dr. Alvin Schonfeld, a pulmonologist, who provided a report in which he concluded Baca's asbestosis was causally related to his exposure to asbestos during his employment. BNSF moved to exclude Dr. Schonfeld's causation opinion as inadmissible because it was unreliable under well-established caselaw.[2] The trial court denied the motion but also granted permission in its order for BNSF to immediately appeal, finding that the order involved a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from the order would materially advance the ultimate termination of this litigation. *See* Tex. Civ. Prac. & Rem. Code § 51.014(d) (West 2017); Tex. R. Civ. P. 168.

BNSF filed a petition for permissive appeal, which we granted. *See BNSF Ry. Co. v. Baca*, No. 02-17-00168-CV, 2017 WL 2570826, at *1 (Tex. App.—Fort Worth June 14, 2017, no pet.) (mem. op. & order). The controlling question of

---

[2]Included among the cases BNSF cited were *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765 (Tex. 2007); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997); and *E.I. DuPont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995).

2

law the trial court identified and ruled upon in its order, and the sole issue in this appeal, is

> whether the Federal Employers Liability Act's (45 U.S.C. §§ 51-60) lower causation standard—*i.e.*, whether a railroad's negligence played any part, even the slightest, in bringing about the injury— makes inapplicable the expert admissibility standards expressed in cases like *E.I. DuPont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995) and *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997).

We answer no. Because the trial court denied BNSF's motion to exclude based on the opposite conclusion, we reverse the trial court's order and remand this case for further proceedings.

## I. BACKGROUND FACTS[3]

FELA makes any railroad engaged in interstate commerce liable in damages for an injury to or death of an employee sustained while employed by the railroad if the injury or death resulted in whole or in part from the negligence of the railroad's employees or by reason of any defect or insufficiency in its equipment due to its negligence. *See* 45 U.S.C.A. § 51; *Union Pac. R.R. v. Williams*, 85 S.W.3d 162, 165 (Tex. 2002). To prevail on a FELA claim, a plaintiff must establish the traditional common-law elements of negligence: duty, breach,

---

[3]Baca has filed a motion to dismiss in which he argues in part that this court lacks jurisdiction over this permissive interlocutory appeal because the issue BNSF has presented for review in its appellant's brief materially differs from the issue it presented in its petition for permissive appeal and which the trial court granted it permission to appeal. Accordingly, we set forth in detail the factual and procedural background of this appeal, that we may appropriately address Baca's jurisdictional argument.

3

foreseeability, and cause-in-fact. *See Tufariello v. Long Island R.R.*, 458 F.3d 80, 87 (2d. Cir. 2006); *Abraham v. Union Pac. R.R.*, 233 S.W.3d 13, 17 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). But a plaintiff's burden to establish a railroad's liability under FELA is lighter than it would be in an ordinary negligence case because FELA prescribes a relaxed standard of causation. *See Lynch v. Ne. Reg'l Commuter R.R.*, 700 F.3d 906, 911 (7th Cir. 2012); *Abraham*, 233 S.W.3d at 17. Under that relaxed causation standard, a plaintiff is entitled to prevail on a FELA claim if the railroad's negligence played any part, even the slightest, in producing the injury or death for which damages are sought. *See CSX Transp., Inc. v. McBride*, 564 U.S. 685, 688, 705 (2011); *BNSF Ry. Co. v. Nichols*, 379 S.W.3d 378, 382 (Tex. App.—Fort Worth 2012, pet. denied). This relaxed causation standard is often referred to as a "featherweight" standard. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998).

## A. BACA'S FELA CLAIM

Baca sued BNSF alleging a claim under FELA.[4] His theory of liability is straightforward: he claims that his exposure to toxic substances and dusts, including asbestos and asbestos-containing products and materials, while in the course of his employment with BNSF caused him to develop asbestosis. Because whether a causal connection exists between a person's exposure to a chemical and a disease from which he suffers is outside the common knowledge

---

[4]Baca also alleged claims for negligence per se and negligent infliction of emotional distress. Those claims are not at issue in this appeal.

4

and experience of lay persons, expert testimony is generally required to prove such a causal connection. *See Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007); *Abraham*, 233 S.W.3d at 18; *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 893–94 (Tex. App.—Texarkana 2004, pet. denied). Baca retained Dr. Schonfeld to do just that.

## B. DR. SCHONFELD'S REPORT

Dr. Schonfeld is a pulmonologist whose qualifications to make an opinion as to whether Baca's exposure to asbestos during his employment with BNSF caused him to develop asbestosis are not at issue. In support of his claim, Baca produced a report from Dr. Schonfeld, in which Dr. Schonfeld summarized his opinion concerning that question.

Dr. Schonfeld's report states that he interviewed and examined Baca. The report sets forth the history of Baca's exposure to asbestos, which was relayed to Dr. Schonfeld by Baca. According to the report, Baca's working career has almost exclusively been as a railroad worker. Baca was laid off from the railroad in approximately 1965, so for a few months he worked for the Arizona Highway Department, where he used asbestos gloves when removing hot objects from a stove. But other than those few months in 1965, the report says, Baca worked for the railroad from 1964 to 1996.

Baca told Dr. Schonfeld that on an intermittent basis for about six months in 1964, he helped demolish a roundhouse in Winslow, Arizona, and he would sweep up asbestos without the use of a mask or respirator. Baca also told Dr.

Schonfeld that he rode on diesel engines that had asbestos in the ceiling and that the asbestos dust would fall on him. Dr. Schonfeld further stated that Baca remembered asbestos was in the brake hoses and that for about six months, he fired the asbestos-clad steam generator on the diesel passenger units and performed repairs on the steam generator on an as-needed basis. Baca further told Dr. Schonfeld that he worked in refrigerator cars that were lined with asbestos and that he would clean them out and sweep up asbestos. Finally, Baca told Dr. Schonfeld that he was present while other employees were changing brake shoes and that he was in other places where employees were working on and repairing the railroad's rolling stock.

Dr. Schonfeld noted that Baca had never smoked. He performed a physical examination on Baca, which revealed that his lungs "were clear to auscultation and percussion." He also noted a report from Dr. Donald Breyer, who on August 30, 2011, had done a B-reading of a chest x-ray that had been performed on Baca on August 16, 2011.[5] Dr. Schonfeld relayed Dr. Breyer's findings, stating Dr. Breyer concluded the x-ray showed irregular interstitial infiltrates in both mid- and lower-lung zones having a "shape and size of s/s and a profusion of 1/0" and that Dr. Breyer had not noted any pleural abnormalities. Dr. Schonfeld also noted that Baca had undergone pulmonary function tests in 2012 and that the results were normal.

---

[5]Baca also designated Dr. Breyer, a board-certified diagnostic radiologist and a certified ILO "B" Reader, as an expert.

6

Based upon all of this information, Dr. Schonfeld concluded as follows:

> Given [Baca's] history of significant exposures to asbestos in the workplace and given an appropriate latency and given the roentgenographic findings described above, I feel with a reasonable degree of medical certainty that Mr. Baca is diagnosed as having bilateral asbestosis. I feel with a reasonable degree of medical certainty that this diagnosis is causally related to his workplace exposures to asbestos as noted above.

BNSF subsequently filed a motion to exclude Dr. Schonfeld's causation opinion.

## II. PROCEDURAL BACKGROUND

### A. BNSF'S MOTION TO EXCLUDE

In its motion to exclude, BNSF argued that Dr. Schonfeld's causation opinion was inadmissible because it was unreliable.[6] *See Daubert*, 509 U.S. at 589 (stating Rule 702 of the Federal Rules of Evidence requires "that any and all scientific testimony or evidence admitted is not only relevant, but reliable"); *Robinson*, 923 S.W.2d at 550, 556–57 (holding Rule 702 of the Texas Rules of Evidence requires the same). It advanced two grounds for why that opinion was unreliable. First, BNSF argued Dr. Schonfeld's causation opinion was not based on a reliable evidentiary foundation. Second, it argued that Dr. Schonfeld's methodology was unreliable. In making these two arguments, BNSF acknowledged FELA's featherweight causation standard. But it asserted that FELA, though relaxing the standard of causation relative to a common-law negligence claim, does not similarly relax the procedural standards for

---

[6]BNSF did not contend that Dr. Schonfeld's opinion was inadmissible because it was irrelevant.

7

determining the threshold issue of whether an expert's causation opinion is admissible. Thus, even though this is a FELA case, BNSF argued, Dr. Schonfeld's causation opinion must meet state procedural requirements for reliability to be admissible, including the requirements of *Daubert* and *Robinson*. *See Kan. City S. Ry. Co. v. Oney*, 380 S.W.3d 795, 800 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("As a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." (quoting *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985))).

Having argued that the trial court was required to apply state procedural standards of reliability to Dr. Schonfeld's opinion, BNSF then discussed the standards it believed apply in this case. Citing *Austin v. Kerr-McGee Refining Corp.*, 25 S.W.3d 280, 292 (Tex. App.—Texarkana 2000, no pet.), it noted that a plaintiff in a toxic tort case must establish both general and specific causation. BNSF focused on specific causation in particular, citing *Havner*, 953 S.W.2d at 714, for the proposition that "[s]pecific causation asks whether the substance at issue caused a particular plaintiff's injury." It pointed to caselaw noting that asbestosis appears to be a dose-related disease, meaning "the more one is exposed, the more likely the disease is to occur, and the higher the exposure the more severe the disease is likely to be." *Borg-Warner*, 232 S.W.3d at 771 (quoting 3 David L. Faigman et al., Modern Scientific Evidence: The Law and Science of Expert Testimony § 28:22, at 447 (2007)). And it also asserted that

8

medical science has established that mere background levels of exposure to asbestos are not sufficient to cause disease; rather, pointing in part to *Borg-Warner*, 232 S.W.3d at 771, BNSF stated, "[t]he accepted threshold exposure for developing asbestosis is at least 4-5 fiber years (f/cc years), and more likely 25 to 100 fiber years."

With the foregoing in view, BNSF turned to discuss *Daubert* and *Robinson*'s reliability standards. It first contended *Daubert* and *Robinson* require expert testimony to be based upon a reliable evidentiary foundation. And in the context of an asbestosis case, BNSF argued, evidence of the amount—or dose—of asbestos the plaintiff was exposed to is a necessary evidentiary foundation for an expert to reliably opine that the plaintiff's exposure to asbestos caused him to develop asbestosis because without knowing the dose, an expert has no reliable basis upon which to conclude that the plaintiff's exposure to asbestos met or exceeded the scientifically-accepted exposure threshold that is necessary to cause that disease. To support that contention, BNSF relied on *Borg-Warner*, 232 S.W.3d at 773, as well as *Abraham*, 233 S.W.3d at 21, in which one of our sister courts stated that "[k]nowledge of the extent of exposure to a potentially harmful substance is essential to any reliable expert opinion that the particular substance caused a disease."

Second, BNSF contended *Daubert* and *Robinson* require the methodology underlying the expert's testimony to be reliable. *See Daubert*, 509 U.S. at 592–93; *Robinson*, 923 S.W.2d at 557. Conducting that inquiry, BNSF argued,

9

requires the trial court to consider whether the expert's methodology (1) has been subjected to peer review and publication, (2) has a high known or potential rate of error, (3) has standards controlling its operation, and (4) enjoys general acceptance within a relevant scientific community. *See Daubert*, 509 U.S. at 593–94; *Robinson*, 923 S.W.2d at 557. Pointing to *Havner*, 953 S.W.2d at 715, BNSF acknowledged that in a toxic-tort case such as this one, a plaintiff simply may not be able to obtain reliable, direct evidence of the amount of the plaintiff's exposure to the toxin. But again pointing to *Havner*, 953 S.W.2d at 720, BNSF stated that in such cases, the expert can utilize epidemiological studies to circumstantially establish that the plaintiff's exposure or dose levels were comparable to or greater than the levels of the subjects in those studies, but the expert must exclude any other plausible causes of the plaintiff's injury or condition with reasonable certainty.

BNSF then argued that Dr. Schonfeld's opinion did not satisfy either of these two reliability requirements.

### B. BACA'S RESPONSE

In response to BNSF's motion, Baca acknowledged that because he brought his FELA claim against BNSF in state court, the trial court was required to apply federal substantive law but state procedural law in considering BNSF's motion. He also acknowledged that decisions concerning the relevance and, consequently, the admissibility of expert testimony are generally based upon procedural rules of evidence. However, Baca argued, whether an expert's

10

testimony is relevant and, therefore, admissible is a question that necessarily depends upon the causation standard that applies to the claim under consideration. Citing *Brown v. Western Railway of Alabama*, 338 U.S. 294, 298 (1949), Baca maintained that state procedural rules cannot be applied in such a way as to impose unnecessary burdens upon the rights of recovery authorized by FELA and argued that FELA's featherweight causation standard should "significantly influence a determination of the admissibility of an expert's causation testimony."

Baca argued that FELA's featherweight causation standard impacted state procedural standards governing the admissibility of expert testimony in two ways. First, Baca argued, FELA's lower causation standard rendered *Borg-Warner* and *Havner* wholly inapplicable in FELA cases. Second, Baca insisted that given FELA's featherweight causation standard, the admissibility standards set forth in *Daubert* and *Robinson* are relaxed in FELA cases such that the trial court should more leniently apply *Daubert* and *Robinson* to expert testimony in a FELA case than it would in a non-FELA case.

### C. THE TRIAL COURT'S RULING

The trial court considered BNSF's motion to exclude by submission. On January 20, 2017, the trial court issued a letter ruling indicating that it had denied the motion. Additionally, in the letter, the trial court explained the basis of its ruling: it stated that in denying the motion, it "went with the plaintiff on the issue of the application of FELA causation standards to . . . Dr. Schonfeld's opinion on

11

causation." The trial court ultimately signed an order denying BNSF's motion to exclude and granting it permission to seek a permissive interlocutory appeal because it found the order involved a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal would materially advance the ultimate termination of this litigation. In pertinent part, the trial court's order provides,

> The controlling question of law as to which there is substantial ground for difference of opinion is whether the Federal Employers Liability Act's (45 U.S.C. §§ 51-60) lower causation standard—i.e. whether a railroad's negligence played any part, even the slightest, in bringing about the injury—makes inapplicable the expert admissibility standards expressed in cases like *E.I. DuPont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995) and *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997). The Court answered this question in the affirmative, holding that FELA's lower causation standard contemplates a lower admissibility threshold for causation evidence.

> An immediate appeal of this interlocutory Order would materially advance the ultimate termination of this litigation because the Court's ruling allows the jury to consider causation evidence that would otherwise be excluded. The answer to this question, therefore, determines whether this case may be resolved without a trial on the merits.

### D. BNSF'S PETITION FOR PERMISSIVE APPEAL AND BACA'S RESPONSE

BNSF subsequently filed a petition for permissive appeal. In its petition, BNSF stated that the sole issue it was presenting for appeal was "[w]hether FELA's lower causation standard—i.e., whether a railroad's negligence played any part, even the slightest, in bringing about the injury—makes Texas's expert admissibility standards inapplicable?"

12

At our request, Baca filed a response to BNSF's petition.  In his response, Baca stated that he agreed that the trial court's order met the jurisdictional standard for a permissive appeal set forth in civil practice and remedies code section § 51.014(d), but he stated that he disagreed "with the way in which the issue has been framed by both the trial court and BNSF" because the way the trial court and BNSF had framed the issue for permissive review did not "fully encompass the nature of the legal issues which are implicated by this appeal." Baca suggested his own phrasing of the question presented for review, a phrasing that he believed more accurately reflected the issue presented in this appeal: "Whether the FELA's lower causation standard—i.e. whether a railroad's negligence played any part, even the slightest, in bringing about the injury—may be modified by applying state expert admissibility rules to impose a higher causation standard."  Baca then concluded by stating he did not "oppose interlocutory review of the issue raised by this appeal" but that he requested that we "grant review on the issue as [he had] more accurately presented it" in his response.

We then granted BNSF's petition for permissive appeal.  *See Baca*, 2017 WL 2570826, at *1.

## III.  JURISDICTION

In conjunction with filing his appellee's brief, Baca filed a motion to dismiss, challenging this court's jurisdiction over this appeal.  Baca argues we lack jurisdiction for two reasons.  First, he argues that this appeal no longer involves a

13

controlling question of law as to which there is a substantial ground for difference of opinion. *See* Tex. Civ. Prac. & Rem. Code § 51.014(d). And second, Baca contends this court has already concluded that it is not proper to review by permissive, interlocutory appeal a trial court's decision whether to exclude an expert's opinion as insufficiently reliable under *Robinson*. *See Blakenergy, Ltd. v. Oncor Elec. Delivery Co.*, No. 02-14-00241-CV, 2014 WL 4771736, at *1 (Tex. App.—Fort Worth Sept. 25, 2015, no pet.) (mem. op.). Neither of these arguments is persuasive.

## A. APPLICABLE LAW

We have jurisdiction to consider a permissive, interlocutory appeal by virtue of a statutorily authorized exception to the general rule that we have jurisdiction over final judgments only. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d); *Eagle Gun Range, Inc. v. Bancalari*, 495 S.W.3d 887, 889 (Tex. App.—Fort Worth 2016, no pet.). Under that exception, we may permit an appeal from an interlocutory order that otherwise would not be immediately appealable if (1) the order involves a controlling question of law as to which there is a substantial ground for difference of opinion and (2) an immediate appeal from the order will materially advance the ultimate termination of the litigation. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d), (f).

14

## B. A CONTROLLING QUESTION OF LAW RESOLVED BY THE TRIAL COURT REMAINS AT ISSUE

We first address Baca's argument that this appeal no longer involves a controlling question of law. As Baca reads it, the trial court's order involves only a very narrow controlling question of law: whether one specific Texas case—*Havner*—applies to a FELA claim. He gets to this reading by stating that he has conceded *Robinson* applies to a FELA claim. Baca maintains that having so conceded, there is no "substantial disagreement" between the parties as to whether *Robinson* applies. Therefore, argues Baca, since *Havner* is the only other case referenced in the trial court's order, the trial court's order only involves the narrow controlling question of law of whether *Havner* applies to a FELA claim. With that premise in place, Baca turns to BNSF's appellant's brief, contending that BNSF did not argue in its brief that *Havner* applies to a FELA claim; it only argued that *Robinson* does. Baca reasons that because he agrees *Robinson* applies to a FELA claim and BNSF has not argued that *Havner* does, this appeal no longer involves a controlling question of law.

Baca's argument is based entirely on the assumption that the controlling question of law involved in the trial court's order is the narrow question of whether two specific Texas cases—*Robinson* and *Havner*—apply in a FELA case. But that is not so. From the face of the trial court's order and the record, it is clear that the controlling question of law involved in the trial court's order is not the narrow question of whether *Robinson* and *Havner*, exclusively, are applicable

15

in determining the admissibility of an expert's causation opinion in a FELA case. Rather, the controlling question of law involved in the trial court's order is the broad question of whether FELA's lower causation standard also lowers the admissibility threshold of causation evidence in a FELA case such that the expert admissibility standards expressed in cases like *Robinson* and *Havner* are inapplicable in determining the admissibility of an expert's causation opinion in a FELA case.

### 1. The Plain Language of the Order

We start with the language of the trial court's order. In relevant part, the order states:

> The controlling question of law as to which there is substantial ground for difference of opinion is whether the [FELA's] lower causation standard—i.e. whether a railroad's negligence played any part, even the slightest, in bringing about the injury—makes inapplicable the expert admissibility standards expressed in cases like [*Robinson*] and [*Havner*]. The Court answered this question in the affirmative, holding that FELA's lower causation standard contemplates a lower admissibility threshold for causation evidence.

The trial court's order does not say that the controlling question of law involved in its order was whether FELA's causation standard makes *Robinson* and *Havner* inapplicable in a FELA case. Nor does the order say that the controlling question of law was whether FELA's causation standard makes the admissibility standards expressed in *Robinson* and *Havner* inapplicable in a FELA case. Both of these formulations would have limited the controlling question of law involved in the trial

16

court's order to a question of the applicability of *Robinson* and *Havner*, specifically. Yet the trial court's order used neither formulation.

Instead, the language in the trial court's order states the controlling question of law as "whether the [FELA's] lower causation standard . . . makes inapplicable the expert admissibility standards *expressed in cases like* [*Robinson*] and [*Havner*]." (Emphasis added). The phrase "expressed in cases like [*Robinson*] and [*Havner*]" is a modifier that clarifies the phrase preceding it— "expert admissibility standards." Examining the language of that modifying phrase, the placement of the words "cases like" before "[*Robinson*] and [*Havner*]" makes plain that the controlling question of law in the trial court's order is not limited to whether *Robinson* and *Havner*, specifically, are applicable. To read the order as involving only the applicability of *Robinson* and *Havner*, as Baca does, is to entirely erase the words "cases like" from the trial court's order. So the order involves the applicability of "the expert admissibility standards expressed in cases like *Robinson* and *Havner*," not the applicability of *Robinson* and *Havner* exclusively.

This construction is confirmed by another portion of the trial court's order that Baca's reading would also erase. After the portion stating the controlling question of law, the very next sentence in the trial court's order states, "The Court answered this question in the affirmative, holding that FELA's lower causation standard contemplates a lower admissibility threshold for causation evidence." In this sentence, the trial court explains that it had decided that

17

[FELA's] "lower causation standard . . . makes inapplicable the expert admissibility standards expressed in cases like [*Robinson*] and [*Havner*]." And it explained the sole reason why it had made that decision was its legal conclusion that "FELA's lower causation standard contemplates a lower admissibility threshold for causation evidence." That language confirms the trial court had broadly ruled that FELA's relaxed causation standard lowers Texas's admissibility threshold for causation evidence in a FELA case.

Thus, when all of the pertinent language in the trial court's order is given effect, it is clear that the controlling question of law on which the trial court ruled is broader than the narrow question only of whether *Robinson* and *Havner* apply in a FELA case. Rather, the trial court's ruling was as follows: because FELA's lower causation standard contemplates a lower admissibility threshold for causation evidence, FELA's lower causation standard makes inapplicable the expert admissibility standards expressed in cases like *Robinson* and *Havner*.

## 2. The Record

That the controlling question of law involved in the trial court's order is not limited to the narrow question of whether *Robinson* and *Havner*, specifically, apply in a FELA case is also confirmed by the record.

In its motion to exclude, BNSF anticipated Baca would argue that "in light of the causation standard under FELA, the standards for reliability and admissibility of expert causation opinions should be relaxed." BNSF maintained

18

that FELA's relaxed causation standard does not relax the standards for admissibility of expert causation opinions in a FELA case.

Baca indeed made the argument BNSF anticipated he would. In Section V, Paragraph D of his response to BNSF's motion, Baca argued that "[i]t is well established that FELA's featherweight causation standard should significantly influence a determination of the admissibility of an expert's causation testimony."[7] In Section V, Paragraph E of his response, Baca argued that "[t]he remedial nature of FELA has a significant effect on the admissibility of expert testimony." He pointed to *Hines* as "the leading case on point," stating that the *Hines* court had held that "FELA['s] relaxed standard of causation also relaxes the threshold of admissibility for the reception of expert testimony." Baca argued that because of this relaxed admissibility standard, (1) *Havner* is inapplicable in a FELA case and (2) *Robinson* "should be applied with a more lenient standard" in a FELA case.[8]

---

[7]For this "well established" proposition, Baca cited only one case: *Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 269 (3d Cir. 1991).

[8]As part of his argument for why this case no longer involves a controlling question of law, Baca argues that he agrees that *Robinson* applies to his FELA claim and that, therefore, there is no substantial disagreement between the parties as to the applicability of *Robinson* in this case. Not so. It is patently clear that the parties did disagree as to the applicability of *Robinson* to Dr. Schonfeld's causation opinion. As we have noted, BNSF argued that *Robinson*'s admissibility standards apply the same in a FELA case as they do in a non-FELA case, whereas Baca argued that those standards apply differently—that is, "more lenient[ly]"—in a FELA case than in a non-FELA case.

19

The trial court considered BNSF's motion by submission. Before signing the order denying the motion, the trial court first sent a letter ruling to the parties informing them of its decision. In the letter, the trial court explained that it had decided to deny the motion and explained its reason for doing so, stating that it "went with [Baca] on the issue of the application of FELA causation standards to . . . Dr. Schonfeld's opinion on causation." The trial court referred the parties to specific portions of Baca's response to BNSF's motion, telling them to "[s]ee generally paragraph[s] D & E" of the response. The trial court additionally stated that it "believe[d] this to be a 'controlling question of law as to which there is substantial ground for difference of opinion.'"

Thus, the record confirms that the parties disagreed over the broad question of whether FELA's lower causation standard lowers the threshold of admissibility for expert causation testimony; that the trial court ruled in the affirmative on that broad question; and that the trial court based its decision to deny BNSF's motion solely upon its resolution of that broad question.

Given the foregoing, we disagree with Baca's argument that this appeal no longer involves a controlling question of law, as well as with his argument that BNSF's appellant's brief presents a controlling question of law that differs from the one the parties presented to the trial court and which the trial court resolved.

### C. BACA'S RELIANCE ON *BLAKENERGY*

Baca also notes that BNSF has argued only that *Robinson* applies to his FELA claim; it has not argued that Dr. Schonfeld's opinion fails to meet

20

*Robinson*'s admissibility standards. But he argues that, to the extent BNSF's appeal can be construed as presenting the issue of whether Dr. Schonfeld's opinion satisfies *Robinson*'s admissibility standards, this court has already determined it is not appropriate to review by permissive appeal a "plain vanilla expert challenge under *Robinson*"—that is, a trial court's determination of whether an expert's testimony satisfies *Robinson*'s admissibility standards. *See Blakenergy*, 2014 WL 4771736, at *1. He asks us to follow our precedent in *Blakenergy* and dismiss this appeal.

Assuming Baca's characterization of our decision in *Blakenergy* is correct, we need not address this argument because this appeal does not present the "plain vanilla expert challenge" of whether Dr. Schonfeld's opinion satisfies *Robinson*'s admissibility requirements.[9] Rather, the trial court denied BNSF's motion to exclude based on its legal conclusion that because FELA's featherweight standard of causation "contemplates a lower admissibility threshold for causation evidence," state procedural standards governing the admissibility of expert testimony "expressed in cases like [*Robinson*] and [*Havner*]" are inapplicable in a FELA case. Thus, the sole issue in this appeal is a pure question of law: whether FELA's causation standard lowers the admissibility threshold for causation evidence in FELA cases.

---

[9]Because we need not address this argument, we express no opinion as to the merit of Baca's characterization of this court's denial of the petition for permissive appeal in *Blakenergy*. *See id*.

21

Because we are unpersuaded by Baca's arguments that this appeal no longer involves a controlling question of law, we deny his motion to dismiss.

## IV. THE TRIAL COURT'S ERRONEOUS LEGAL CONCLUSION WAS AN ABUSE OF DISCRETION

In its sole issue, BNSF argues the trial court abused its discretion by concluding that in a FELA case, FELA's featherweight causation standard lowers our state's standards governing the admissibility of expert testimony.

### A. STANDARD OF REVIEW

Even in a FELA case, a trial court's evidentiary rulings, including its decision whether to admit expert testimony, is subject to an abuse-of-discretion standard of review. *See Abraham*, 233 S.W.3d at 17; *Mo. Pac. R.R. v. Navarro*, 90 S.W.3d 747, 750 (Tex. App.—San Antonio 2002, no pet.). Here, the trial court based its decision to deny BNSF's motion to exclude solely on its determination of a pure question of law. A trial court has no discretion to make an erroneous legal conclusion even in an unsettled area of law. *In re United Scaffolding, Inc.*, 301 S.W.3d 661, 663 (Tex. 2010) (orig. proceeding); *In re Mo. Pac. R.R.*, 998 S.W.2d 212, 216 (Tex. 1999). We review a trial court's determination of a pure question of law de novo, affording no deference to the trial court's conclusion. *See RSI Int'l, Inc. v. CTC Transp., Inc.*, 291 S.W.3d 104, 107 (Tex. App.—Fort Worth 2009, no pet.).

22

## B. APPLICABLE LAW

As a general rule, when a plaintiff brings a FELA claim in state court, the court applies federal substantive law and state procedural law. *See Dickerson*, 470 U.S. at 411; *Oney*, 380 S.W.3d at 800. But a state procedural rule may not interfere with, lessen, or destroy any of the substantive rights afforded to the plaintiff under FELA. *See Brown*, 338 U.S. at 298–99; *Scott v. Atchison, Topeka & Santa Fe Ry.*, 572 S.W.2d 273, 281 (Tex. 1978) (op. on reh'g); *Oney*, 380 S.W.3d at 800. Any state procedural rule that does so must yield. *See Brown*, 338 U.S. at 298–99; *Scott*, 572 S.W.2d at 281; *Oney*, 380 S.W.3d at 799–800.

## C. TEXAS'S PROCEDURAL STANDARDS APPLY

In accordance with the general rule that state courts apply state procedural law in cases brought under a federal statute in state court, Texas courts apply state rules of evidence when determining the admissibility of expert testimony in FELA cases. *See Nichols*, 379 S.W.3d at 382 ("Although [appellees'] claim is pursuant to [FELA], the trial court must follow state procedure in determining the reliability of expert testimony."); *Abraham*, 233 S.W.3d at 18 ("Despite the fact that appellants assert a claim under the [FELA], the trial court must follow state procedure in determining the reliability of expert testimony."); *Navarro*, 90 S.W.3d at 754–59 (applying state procedural rules in determining the admissibility of expert testimony in a FELA case). Accordingly, as relevant here, in a FELA case brought in state court, expert testimony must be reliable to be admissible. *See*

23

*Nichols*, 379 S.W.3d at 382 (citing *Robinson*, 923 S.W.2d at 556). This general proposition is not in dispute here.

In the trial court, Baca argued that FELA's featherweight causation standard relaxes Texas procedural standards for determining the admissibility of expert testimony regarding causation in a FELA case. The trial court agreed and based its decision to deny BNSF's motion to exclude solely on that legal conclusion. BNSF argues that this conclusion is contrary to what the courts in this state, the federal courts, and the courts in many other states have recognized: the standard of causation under FELA and the standards for admission of expert testimony under the applicable rules of evidence are distinct issues that do not affect one another. Thus, BNSF argues, the trial court abused its discretion by concluding that FELA's featherweight causation standard relaxes our state's procedural standards for admissibility of expert testimony in a FELA case.

### 1. Texas Authorities

BNSF is correct that two of our sister courts have squarely held that FELA's featherweight causation standard does not lower the threshold for admissibility of expert testimony in a FELA case. The first to do so was the Fourth Court of Appeals in *Navarro*. *See* 90 S.W.3d at 751. That case involved a FELA claim in which the plaintiff alleged that her exposure to diesel exhaust during her employment with the defendant railroad caused her to develop bone marrow cancer. *Id.* at 749. On appeal, the railroad argued that the testimony of

24

the plaintiff's causation experts should have been excluded because the testimony was scientifically unreliable. *Id.* at 749. In addressing that argument, the court acknowledged FELA's lower burden of causation but noted that lower burden had "not been generally applied to the admissibility of expert testimony" in a FELA case and that "the *Daubert* standard of admissibility of expert evidence [in a FELA case] extends to each step in an expert's analysis all the way through the step that connects the work of the expert to the particular case."[10] *Id.* at 751 (internal quotation omitted). And in analyzing whether the challenged expert causation testimony was unreliable, the court applied Texas's standards. *See id.* at 754–59.

The Fourteenth Court of Appeals followed suit in *Abraham*. *See* 233 S.W.3d at 17–20. That was a FELA case in which the plaintiffs alleged that their exposure to creosote during their employment with the defendant railroad caused them to suffer diseases of the throat, lungs, and skin, including cancer. *Id.* at 16. The defendant railroad challenged the plaintiff's expert's causation opinion on the ground that it was not scientifically reliable. *Id.* The court applied state procedural standards in determining the reliability of the challenged expert testimony. *See id.* at 18 (citing *Robinson*, 923 S.W.3d at 565). It agreed that the standard of causation under FELA and the standards of expert testimony under the rules of evidence are distinct issues and do not affect one another. *See id.* at

_____

[10]The court noted that our supreme court adopted *Daubert* in *Robinson*. *See id.* at 750.

25

19–20. And, consequently, it agreed that FELA's featherweight causation standard did not relax our state's procedural standards governing the admissibility of expert testimony such that courts must admit expert testimony in FELA cases that would be inadmissible in other contexts. *See id.*

We also find the supreme court's decision in *In re GlobalSantaFe Corp.*, 275 S.W.3d 477 (Tex. 2009) (orig. proceeding), instructive to our analysis. That case involved a claim under the Jones Act, which provides for a cause of action against the employer of a seaman who sustains an injury or death in the course of his employment. *See* 46 U.S.C.A. § 30104 (West 2007); *GlobalSantaFe*, 275 S.W.3d at 479–80, 480 n.1. The Jones Act expressly incorporates FELA and the case law developing that statute. *See Ellis*, 971 S.W.2d at 406; *see also* 46 U.S.C.A. § 30104. Thus, like FELA, the Jones Act establishes a featherweight standard of causation. *See Ellis*, 971 S.W.2d at 406. And courts therefore often look to caselaw applying FELA when analyzing claims under the Jones Act. *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46–47, 47 n.9 (2d Cir. 2004) (looking to FELA cases when analyzing whether the Jones Act's relaxed standard of causation lowered the standards for admissibility of expert testimony under the rules of evidence); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981) (noting that because the Jones Act expressly incorporates FELA and case law developing that statute, the court could "appropriately look to FELA cases to test the sufficiency of the allegations and proof in this Jones Act claim").

In *GlobalSantaFe*, the supreme court considered whether the Jones Act preempted certain provisions of Chapter 90 of the civil practice and remedies code, including section 90.004, which requires a plaintiff in silica cases to serve a detailed expert report on each defendant. *See* 275 S.W.3d at 479–80; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 90.004 (West 2017). This provision, the court said, "endeavors to assure that claims are not brought and pursued unless they are supported by reliable expert evaluations of the claimant." *GlobalSantaFe*, 275 S.W.3d at 482. After discussing the general principles of preemption in Jones Act cases, the court concluded that "[t]he requirements embedded in Chapter 90 to assure reliable expert confirmation of silica-related diseases are not preempted by the Jones Act."[11] *See id.* at 486.

In explaining its conclusion, the court discussed the standards governing the admissibility of expert testimony. *See id.* at 486–87. In particular, it noted that federal caselaw has developed standards for admission of expert testimony that focus on the trial court's role in determining the reliability of such testimony and that Texas caselaw, drawing heavily from federal jurisprudence, had developed similar standards. *See id.* It then discussed the issue of whether the Jones Act's featherweight causation standard affected the application of state procedural rules governing the admission of expert testimony. The court said,

---

[11]The court concluded, however, that the Jones Act preempts section 90.004(b)(2) because that provision "requires claimants in some cases to establish a minimal level of impairment," which conflicts with the Jones Act. *See id.* at 483, 489.

To the extent that Jones Act jurisprudence recognizes a special standard for proving causation, federal cases have held that this causation standard does not exempt Jones Act cases from the general rules for admission of expert testimony. We see no basis for holding that Texas law generally governing the admission of expert testimony, which draws so heavily from federal law, is preempted by the Jones Act.

*Id.* (citations omitted). Thus, in *GlobalSantaFe*, the supreme court expressed disapproval of the notion that a featherweight causation standard alters the applicability of Texas law generally governing the admission of expert testimony.

## 2. Federal and State Authorities

The decisions in *Navarro*, *Abraham*, and *GlobalSantaFe* are in line with the overwhelming weight of authority in the federal courts, as well as the courts in other states. As BNSF has pointed out in its brief, several federal authorities have held that a featherweight causation standard—whether under FELA or the Jones Act—does not relax the threshold of admissibility for expert testimony. *See, e.g.*, *Wills*, 379 F.3d at 47 (noting that "the standards for determining the reliability and credibility of expert testimony are not altered merely because the burden of proof [under the Jones Act] is relaxed"); *Claar v. Burlington N. R.R.*, 29 F.3d 499, 503 (9th Cir. 1994) ("The standard of causation under FELA and the standards for admission of expert testimony under the Federal Rules of Evidence are distinct issues and do not affect one another."); *see also Taylor v. Consol. Rail Corp.*, No. 96-3579, 1997 WL 321142, at *6–7 (6th Cir. June 11, 1997) (unpublished table decision) (holding that the typical standards for determining the admissibility of expert testimony "are not modified by the relaxed standard of

28

proof in FELA cases"); *Cantrell v. BNSF Ry. Co.*, No. Civ 12-0129, 2013 WL 8632378, at *4 (D.N.M. June 28, 2013) (noting that the relaxed causation standard under FELA and the standard for admission of expert testimony are distinct issues that do not affect one another); *Clements v. CSX Transp., Inc.*, No. 3:09-cv-122-TCB, 2011 WL 13136959, at *3 (N.D. Ga. Dec. 13, 2011) (noting that if a plaintiff in a FELA case chooses to introduce expert testimony, the trial court must apply the same admissibility analysis that applies in any other case), *amended in part on other grounds*, 2012 WL 12897089 (N.D. Ga. Jan. 9, 2012). In addition, as BNSF observed in its brief, the courts in several states have concluded that FELA's relaxed burden of proof does not alter the applicability of their state's procedural standards governing the admissibility of expert testimony. *See, e.g.*, *Smith v. CSX Transp., Inc.*, 806 S.E.2d 890, 893–94 (Ga. Ct. App. 2017); *Smart v. BNSF Ry. Co.*, 369 P.3d 966, 971–72 (Kan. Ct. App. 2016); *see also Russell v. Ill. Cent. R.R.*, No. W2013-02453-COA-R3-CV, 2015 WL 4039982, at *2–3 (Tenn. Ct. App. June 30, 2015) (applying state procedural rules in determining admissibility of expert testimony in FELA case); *McNeel v. Union Pac. R.R.*, 753 N.W.2d 321, 328–30 (Neb. 2008) (applying state procedural standards governing admissibility of expert testimony in a FELA case in the same manner as in other cases.).

Thus, in addition to the fact that several Texas courts have concluded that a relaxed standard of causation does not relax our state's procedural standards governing the admissibility of expert testimony, there is a broad range of

29

authority from the federal courts and courts in other states holding that FELA's lower causation burden does not alter the applicable procedural standards governing the admissibility of expert testimony.

### 3. Baca's Authorities

In his appellee's brief, Baca did not address the merits of the question presented in this permissive appeal or the significant number of authorities BNSF presented in support of its position on that question. Rather, he reurged some of the arguments he made in his motion to dismiss this permissive appeal.[12] Our analysis above concerning those arguments is equally applicable here, and we need not restate it. We note, however, that in his response to BNSF's motion in the trial court, Baca cited two cases that he argued supported his position that FELA's relaxed causation standard relaxed the threshold for admissibility of expert testimony in this FELA case. We briefly address those cases.

In his response in the trial court, Baca argued that "[i]t is well established that FELA's featherweight causation standard should significantly influence a determination of the admissibility of an expert's causation testimony." For this proposition, he cited only one case: *Hines v. Consolidated Rail Corp.*, 926 F.2d 262 (3rd Cir. 1991). Indeed, the court in that case concluded that the causation

---

[12]That is, in his appellee's brief, Baca argues that because he agrees that *Robinson* applies to his claim, and because BNSF has not specifically argued that *Havner* and *Borg-Warner* apply, "there is nothing further for this [c]ourt to consider[,] and this [c]ourt should affirm the trial court's ruling on BNSF's motion to exclude the expert opinions of Dr. Schonfeld."

standard under FELA can significantly influence a determination of the admissibility of expert testimony. *Id.* at 269. However, as our sister court observed in *Abraham*, the *Hines* decision predates the Supreme Court's seminal decision in *Daubert*, which articulated standards for assessing the reliability of expert testimony. *Abraham*, 233 S.W.3d at 18. And of course, our supreme court subsequently adopted *Daubert*. *See Robinson*, 923 S.W.2d at 556–57. As the cases we have discussed above demonstrate, since *Daubert*, Texas, federal, and sister-state courts have consistently applied in FELA cases the same expert-testimony admissibility standards they apply in non-FELA cases. We thus find *Hines* unpersuasive. *See Wills*, 379 F.3d at 47 (declining to follow *Hines* and holding that "*Daubert*'s standards for determining the admissibility of expert testimony apply regardless of whether the plaintiff's burden to prove causation is reduced"); *Abraham*, 233 S.W.3d at 20 (concluding *Hines* was unpersuasive because it was decided before *Daubert* and *Robinson*).

In his response in the trial court, Baca also argued that the Third Court's decision in *Navarro* and the Fourteenth Court's decision in *Abraham*, both of which concluded that FELA's relaxed causation burden does not relax the standards for admissibility of expert testimony, are "no longer the law in a FELA case" after the Supreme Court's decision in *McBride*. *See McBride*, 564 U.S. 685; *Abraham*, 233 S.W.3d at 19–20; *Navarro*, 90 S.W.3d 750–51. But *McBride* was a jury-charge case concerning whether the trial court had erred by failing to include a proximate-cause instruction in the jury charge. *See* 564 U.S. at 689–

31

90. The Court concluded it had not, holding that in FELA cases, juries "are properly instructed that a defendant railroad 'caused or contributed to' a railroad worker's injury 'if [the railroad's] negligence played a part—no matter how small—in bringing about the injury.'" *Id.* at 705. Thus, *McBride* did not deal with the admissibility of expert testimony in FELA cases. And even after *McBride*, courts have continued to recognize a distinction between FELA's causation standard and the procedural standards governing the admissibility of expert testimony. *See Whalen v. CSX Transp., Inc.*, No. 13 Civ. 3784, 2016 WL 5723877, at *17 n.17 (S.D.N.Y. Sept. 29, 2016); *Cantrell*, 2013 WL 8632378, at *4; *Clements*, 2011 WL 13136959, at *3; *Smith*, 806 S.E.2d at 893–94; *Farley v. BNSF Ry. Co.*, No. 112,872, 2016 WL 1169426, at *7 (Kan. Ct. App. Mar. 25, 2016). We are therefore unpersuaded that *McBride* upended this well-established distinction.

## 4. Texas's Admissibility Standards Apply

We agree with the reasoning of the courts that have concluded that the standard of causation under FELA and the standards for admission of expert testimony under the applicable rules of evidence are distinct issues that do not affect one another and that, consequently, FELA's featherweight causation standard does not require a Texas trial court to admit expert testimony in a FELA case that would be inadmissible in a non-FELA case. *See Claar*, 29 F.3d at 503–04; *Abraham*, 233 S.W.3d at 19–20. We therefore hold that FELA's featherweight causation standard does not render inapplicable in FELA cases

32

our state procedural law governing the admissibility of expert testimony. The trial court abused its discretion by concluding to the contrary. *See United Scaffolding*, 301 S.W.3d at 663 ("[A]n erroneous legal conclusion is an abuse of discretion, even if it may not have been clearly erroneous when made."). We sustain BNSF's sole issue.

## V. CONCLUSION

Having concluded that this appeal continues to involve a controlling question of law as to which there is a substantial ground for difference of opinion, we deny Baca's motion to dismiss. And having sustained BNSF's sole issue, we reverse the trial court's order denying BNSF's motion to exclude and remand this case for further proceedings. *See* Tex. R. App. P. 43.2(d).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: WALKER, GABRIEL, and KERR, JJ.

DELIVERED: March 29, 2018